4    19
11   519.
29*  939
39*  968

[No. 397. Decided March 7, 1892.]

STATE OF WASHINGTON, *Appellant,* v. J. W. WOMACK, R. L. EDWARDS, M. C. SULLIVAN, AND C. O. EAMES, *Respondents.*

BRIBERY—INDICTMENT—EXECUTIVE OFFICER—BOARD OF EDUCATION.

An indictment for attempting to bribe a member of the state board of education which charges that defendants "did then and there conspire together to tempt, seduce, bribe and corrupt said member by then and there offering to pay him $5,000, all of which said defendants then and there did and performed to unlawfully and corruptly induce, influence and bribe said member," is sufficient, as the antecedent of "did and performed" is obviously the offering to pay, and not the conspiring together. (ANDERS, C. J., and STILES, J., dissent.)

A member of the board of education is an executive officer, charged by law with certain executive functions, and art. 3, § 1 of the constitution, which defines the executive department, does not limit the executive officers of the state to the officers therein mentioned.

The state board of education has power to reconsider a vote whereby a resolution was passed adopting a uniform system of school books; and, as such action is legal, an offer to bribe an officer to move for such reconsideration is subject to indictment under Code 1881, § 879.

*Appeal from Superior Court, Thurston County.*

The facts are stated in the opinion.

*Charles H. Ayer,* County Attorney, and *W. A. Reynolds,* for The State.

*Calkins, Shackleford & Calkins,* for respondents.

The opinion of the court was delivered by

DUNBAR, J.—Under the provisions of chapter 12 of the Laws of 1889–90, approved March 27, 1890, and which by reason of the emergency clause went into effect upon its approval, the governor appointed four persons, who,

together with the superintendent of public instruction, were to be denominated the board of education of the state. Among other things it was made the duty of the board at their first regular meeting in June, 1890, to adopt a uniform series of text books for the use of the common schools of the state, and to enter into a contract with the publishers to supply the same. In accordance with the provisions of the act, the board met and proceeded to adopt certain school books for the state. Prior, however, to entering into a contract with the publishers of the books adopted, and at the same meeting, the alleged attempt to bribe one of the board, to wit, L. H. Leach, was made, and an indictment was found against the defendants herein for the crime of an attempt to bribe. The indictment was demurred to, and the demurrer was sustained, and the state has brought the case here on appeal. The body of the indictment is as follows:

"J. W. Womack, R. L. Edwards, M. C. Sullivan and C. O. Eames are accused by the grand jury of the State of Washington, for the County of Thurston, by this indictment, of the crime of attempting to bribe a member of the state board of education of the State of Washington, committed as follows:

"That heretofore, to wit, on the 9th day of June, 1890, in said Thurston County, State of Washington, L. H. Leach was a duly appointed, qualified and acting member of the state board of education for the State of Washington, and was then and there engaged with the said board of education in holding the first regular meeting in June, 1890, of said board of education in the capital of said state, to wit, Olympia, Thurston County, State of Washington; and said L. H. Leach, as a member of and with said board of education, then and there had under consideration and for the action of said board of education the adoption of a uniform series of text books for the use of the common schools, including graded schools throughout said state; and that J. W. Womack, R. L. Edwards, M. C. Sullivan and C. O. Eames then and there, well knowing the premises, did then

and there unlawfully, wickedly and corruptly contrive and conspire together to tempt, seduce, bribe and corrupt said L. H. Leach so being then and there engaged in his said official duties with said board of education in adopting a uniform series of text books for the use of the common schools, including graded common schools, throughout said state, to prostitute, abuse and unlawfully betray his said trust and violate his duty as a member of said board of education, to act in his said official capacity with partiality and favor, by then and there offering to pay said L. H. Leach five thousand dollars; all of which said J. W. Womack, R. L. Edwards, M. C. Sullivan and C. O. Eames then and there did and performed to unlawfully and corruptly induce, influence and bribe said L. H. Leach, in his said capacity and character as member of said board of education, corruptly and unlawfully to exercise and perform the duty so vested in him as such member of said board, with partiality and favor, by then and there moving and voting for a resolution reconsidering a vote theretofore had by said board, by which certain text books had been adopted by said board, to wit, Wentworth's arithmetics and Franklin readers; and to move and vote for a resolution adopting by said board certain other text books, to wit, Barnes' readers and White's or Robinson's arithmetics; which latter books said J. W. Womack, R. L. Edwards, M. C. Sullivan and C. O. Eames were then and there interested in procuring said board of education to adopt as text books for the use of the common schools, including graded common schools, throughout said state."

It is alleged by the defendants that the indictment is bad, because (1) it does not state that any crime was committed; (2) the officers of the board are not included or contemplated by our statute on bribery; (3) that the board of education having once passed a resolution adopting a series of school books for the use of the public schools of the state could not legally reconsider the vote or rescind their action. While the appellant contends that the indictment is sufficient to sustain a verdict for an

attempt to bribe, and that in any event the indictment charges a conspiracy, and that in charging a conspiracy it is not necessary to charge any overt acts.

But it is not necessary for us to discuss the last contention of appellant, for we think the indictment as a whole, submitted to a fair construction, shows it to be sufficient to maintain the crime named in the charge, viz., an attempt to bribe. The statute (Penal Code, § 174) provides that—

"Every person who shall bribe or attempt to bribe or offer any present, bribe or reward to any judge, justice of the peace, juror, commissioner, referee, auditor, arbitrator, or person summoned as a juror, or to any executive, judicial, or ministerial officer, or member of the legislature, for the purpose of influencing him in the exercise of any of the powers in him vested for the performance of any duty of him required, shall on conviction thereof be imprisóned in the county jail any length of time not exceeding one year, and fined in any sum not exceeding two thousand dollars, or fined only."

What does this indictment charge? Setting up the material portions and eliminating that which is immaterial, we get at the substantive charge by the following words: "Did then and there conspire together to tempt, seduce, bribe and corrupt said L. H. Leach by then and there offering to pay said L. H. Leach five thousand dollars." It is claimed that the words "then and there offered to pay," etc., simply describe the manner of the conspiring instead of asserting that the money was offered to Leach. But an indictment, like every other written instrument, must be construed with reference to the whole indictment, and not to segregated or detached portions and statements; and while the language employed might possibly be tortured into this meaning, considering them with reference to the language preceding and following, it is not the natural construction.

Follow the above words by the following sentences: "All of which said J. W. Womack, R. L. Edwards, M. C. Sullivan and C. O. Eames then and there did and performed to unlawfully and corruptly induce, influence and bribe said L. H. Leach," etc.      The obvious antecedent of "did and performed" was the offering to pay, and not the conspiring together.      They could conspire together without doing any overt acts, and in an indictment for conspiracy all that would be necessary to charge would be the conspiracy, and when they do something, it is an addition to the conspiracy, and the recital of that something cannot be held to be descriptive of the conspiracy. The use of the participle in charging the act is probably not as commendable a practice as is the use of the verb, but it is in common use, and no court we think has ever held an indictment bad because that form of speech was employed. By our statute many of the technicalities and cobwebs and mysticisms of the common law have been swept away, as well in criminal as in civil pleading, and more liberal and common sense rules of construction are to be applied to indictments.      Of course words and sentences are to be construed with reference to well understood legal meaning the same now as before the code, and defendants charged with crime must be just as legally convicted, and their rights be just as sacredly protected, but it is their substantial rights which the law now regards, and it refuses to allow defendants charged with crime to escape from a trial on the merits by reason of omission of some particular form of words, the use of which in any other branch of business has been obsolete for the last one hundred years. In other words, an indictment under the code, instead of being an artificial something, separate and distinct in its nature and surrounded by embarrassing technicalities, is a plain statement in ordinary and concise language of a fact or state of facts.      Or, as was forcibly expressed by

Chief Justice GREENE, in *Leonard v. Territory*, 2 Wash. T. 393 (7 Pac. Rep. 872):

"From the statutory provisions, we gather that our courts, and defendants in the courts, are to view indictments through the simple atmosphere of common sense, and not through the line-multiplying spectroscope of the common law."

It is true that under the provisions of the code the indictment must be direct and certain, as regards the crime charged and the particular circumstances of the crime charged when they are necessary to constitute a complete crime; and while we think this indictment meets this requirement standing alone, yet that provision must be construed in connection with a subsequent section, which provides that the indictment is sufficient if "among other qualifications it can be understood therefrom that the act or omission charged as the crime is clearly and distinctly set forth in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended." The real object of an indictment is brought out in the last sentence. An indictment can have no other use than to inform the defendant of what crime he is charged, so that he may prepare his defense. When it does not do this the defendant should not be forced to trial, but when it does so inform him it has fulfilled its mission. Would anyone have the hardihood to say that Edwards and Sullivan and Eames, conceding them to be men of common sense, were not able to understand from this indictment when they read it that they were charged with attempt to bribe Leach to move for a resolution to reconsider a certain vote of the board of education by offering to pay him five thousand dollars? We think not, and must, therefore, conclude that the indictment is sufficient.

It is also contended by the respondents that the state

constitution having provided who shall be the executive officers of this state, no one is subject to indictment under the code for offering to bribe any other officer excepting those named. That the constitution repeals the law as to all executive officers excepting the governor, lieutenant governor, secretary of state, treasurer, auditor, superintendent of public instruction and commissioner of public lands. If this were true we are inclined to think the indictment is sufficient to put the defendants upon a trial for a common law offense. Bribery, as defined by the common law, is the unlawful giving or receiving of anything of value in corrupt payment for an official act done or to be done. 2 Bishop on Criminal Law (7th ed.), 85. Greenleaf defines bribery generally as the receiving or offering of any undue reward by or to any persons whose ordinary profession or business relates to the administration of public business in order to influence his behavior in forcing or inducing him to act contrary to known rules of honesty and integrity. Our statute has not attempted to define the crime of bribery. The most that it has done, if it can be said to have legislated upon the subject at all, is to assert that certain acts constitute bribery, and to fix the penalty for a commission of those acts. This statute has not abrogated or repealed the common law as to crimes; but, on the contrary, has recognized and adopted them. Of course, where the crime is defined by the statute, and the punishment fixed, as many crimes are defined by our laws, such as murder, larceny, assault and battery, etc., the common law is abrogated as to that crime, but such we think was not the intention of the legislature with reference to the crime of bribery.

But it is not necessary for us to decide this question, as we are of the opinion that Leach was an executive officer of the state, and that the statute in relation to bribery of executive officers was not repealed or abrogated by § 1 of article 3 of the constitution. The constitution does not

in our opinion undertake to limit the executive officers of the state to the officers mentioned in § 1, and construed in harmony with its other provisions, especially with § 2 of article 27, that "all laws now in force in the Territory of Washington, which are not repugnant to this constitution, shall remain in force until they expire by their own limitation, or are altered or repealed by the legislature," it will appear that the object of the constitution makers was to classify the executive departments of the state rather than to exclusively establish its executive officers. The language of the section is mandatory. It says, "The executive department shall consist," etc. If the contention of the respondents is correct, that the intention of the section was to limit the executive officers of the state, their further position that the legislature can by subsequent enactment increase those officers, is untenable, for the essence of a constitutional provision is its limitation on the power of the legislature, and when the constitutional provision is exclusive in its nature it is supreme, and it is not within the power of the legislature to vacate or alter it. Hence their main contention would force us to the absurd conclusion that the constitution perpetually limits the executive officers of the state to the officers mentioned in said section. No known rule of construction will justify such a conclusion in this case. Section 1 of article 2 of the constitution of the United States provides that the executive power of the United States shall be vested in a president of the United States of America. Section 3 of article 3 of our constitution provides that the supreme executive power of this state shall be vested in the governor, but the power conferred on the president by the constitution of the United States has no qualifications. This language is fully as conclusive as the language used in § 1 of article 3 of our constitution, but we think it will scarcely be contended that the framers of that revered docu-

ment intended to legislate exclusive executive power in the president of the United States, or that they intended aught else than that the president should be the head of the executive department.   The members of this board are certainly public officers under any definition that can be found of the term public officer.   The departments of the government provided for in our state constitution, like most state constitutions, are divided into three general classifications, viz., the executive, judicial and legislative, and when an officer is appointed or elected under our system of government he comes within one of these classes.   Judicial officers are those which relate to the administration of justice, and the term has a meaning so well and so universally understood that a technical definition is entirely unnecessary. The legislative officers are as well understood as relating to the enactment of laws.   Hence the members of the school board, appointed under the provisions of the act of March 27, 1890, cannot be construed as either judicial or legislative officers.   Something has been said about ministerial officers.   A ministerial office, as defined by Bouvier, is one which gives the officer no power and no charge of the matter to be determined, but requires him to obey the mandates of the superior.   Plainly these officers would not fall within this classification even if the theory of the appellant is not true, that this designation applies more properly to a class of acts that may be required of any officers rather than to a class of officers, and that the acts of any officers in which they have no discretion are ministerial.   An executive officer, however, is one whose duties are mainly to cause the laws to be executed, and this power is especially conferred upon this board by the second section of the act creating them.   It provides that the administration of the common school system shall be entrusted to the state superintendent of public instruction, and the

state board of education, etc., and some other provisions for the appointment of the board.

We think there is nothing in the contention of the respondents, that the board having once passed a resolution adopting a uniform system of school books could not legally reconsider the vote or rescind their action, and that it was not a crime to offer to bribe an officer to do something which the officer could not legally do. The case cited to sustain the position, viz., *State, ex rel. Flowers v. Board of Education*, 35 Ohio St. 368, does not seem to meet the requirements. That case was decided on the strength of a special statutory restriction on the board of education, which was as follows: "No text book shall be changed within three years after its adoption without the consent of three-fourths of the members of the board of education given at a regular meeting," etc., and the change made by the board in that instance had been by a vote of six to five, a bare majority. Besides, the general rule is that a legislative or deliberative body of any kind has power to reconsider any of its actions. When not regulated by statute the body has a right to adopt its own rules as to the time when reconsideration can be moved. But we think there is no parliamentary law which would prohibit the moving for a reconsideration of a vote during the same session at which the original vote was taken.

Construing the indictment as a whole and the constitution as it was evidently intended by the framers, we think the indictment is sufficient and that the court erred in sustaining the demurrer. The judgment will be reversed, and the cause remanded to the lower court with instructions to try the cause.

HOYT and SCOTT, JJ., concur.

ANDERS, C. J., and STILES, J., dissent.