THE PEOPLE, PLAINTIFF AND RESPONDENT, *v.* BENÍTEZ ET AL., DEFENDANTS AND APPELLANTS.

APPEAL from the District Court of Humacao in a Prosecution for the Violation of Section 85 of the Penal Code.

No. 723.—Decided May 28, 1915.

EXECUTIVE POWER—SCHOOL BOARD—QUASI-PUBLIC CORPORATION.—For the purposes of section 85 of the Penal Code, the members of a school board, which is a quasi-public corporation whose duty it is to administer the common school system, are included in the executive branch of the Government.

ERROR—EVIDENCE.—After considering the evidence in this case it was held that as there is nothing to show that the judge of the district court who heard all the evidence committed any fundamental error, the judgment should be affirmed.

EXECUTIVE OFFICER.—An executive officer is one whose duties are chiefly to cause the laws to be executed.

The facts are stated in the opinion.

*Messrs. Eugenio Benítez Castaño* and *Rossy & Guillermety* for the appellants.

*Mr. Salvador Mestre, fiscal,* for The People.

MR. JUSTICE DEL TORO delivered the opinion of the court.

This is an appeal from a judgment of the District Court of Humacao convicting the defendants, Miguel Benítez and Pablo Luis, of the misdemeanor defined and penalized by section 85 of the Penal Code and sentencing them to pay a fine of $200 each or to be imprisoned in jail for three months.

The information charged that the defendants, who were members of the school board of Vieques, in their official character asked a certain person for a gratuity of $750 to perform a certain official act which they were required to perform without any remuneration whatever, namely, to approve an amended ordinance for the purchase of a house for school purposes.

As material grounds for the appeal taken by them, the appellants allege the following:

*First.* That the defendants could not be found guilty of the offense defined and punished by section 85 of the Penal Code, and

*Second.* That in any event the evidence was not sufficient to support the judgment rendered.

Let us examine the first ground. Section 85 of the Penal Code reads as follows:

"Every executive or ministerial officer who knowingly asks or receives any emolument, gratuity, or reward, or any promise thereof, excepting such as may be authorized by law, for doing any official act, is guilty of a misdemeanor."

The appellants contend that as members of the Vieques school board they were not executive or ministerial officers and that, therefore, the section quoted and on which the information and the judgment are based is not applicable.

Said section 85 is a part of Title VIII of the Penal Code treating of crimes by and against the executive power. The said title precedes Title IX, which treats of crimes (*by and*) against the legislative power, and Title IX precedes Title X which treats of crimes against public justice. In proceeding thus the Legislature included all the branches of the Government with the evident intention that no criminal act committed in relation thereto should remain unpunished.

That the members of a school board, which is a quasi-public corporation, do not form part of the legislative or judiciary powers does not even admit of discussion, therefore they must be included in the executive branch for the purposes of the said Penal Code.

The question has been decided by the Supreme Court of the State of Washington. In the case of *State* v. *Womack,* 4 Wash., 19–27, the said court laid down the following doctrine:

"An executive officer is one whose duties are mainly to cause the laws to be executed, which can be construed to include the members of a school board, whose duty it is to administer the common school system."

Having disposed of the first question raised by deciding that section 85 of the Penal Code is applicable, let us consider whether the evidence was sufficient to establish the guilt of the defendants beyond a reasonable doubt.

Joaquín Rodríguez, president of the school board of which the defendants were members, relates at length a certain transaction relative to the purchase of a house belonging to José Agustín Díaz for school purposes. The Commissioner of Education intervened, an agreement was reached and the purchase price was fixed, but some difficulties arose

as to the title, which were duly overcome. After approving the ordinance authorizing the execution of the contract it was returned to the school board to be amended so as to include expressly in the contract certain appurtenances of the house. The amendment was a simple one and the vendor was perfectly agreeable that it should be made. Nevertheless, the matter was delayed and the witness testified that one day the son of the owner of the house called on him for the purpose of closing the transaction and told him that he attributed the attitude of the other members of the board to the fact that the vendor had not kept his promise to remunerate them in case the deal was consummated.

José Agustín Díaz, the owner of the house, testified concerning the preliminary negotiations and said that when they informed him that the matter had been referred to the Commissioner of Education, defendant Miguel Benítez said to him that if he sold the house he would have to make them a present, to which the witness replied, "Yes, of course."

Agustín Díaz Smaine, the most important witness for the prosecution, son of the owner of the house and the one who treated directly with the defendants, testified in detail to the various conversations he had with them and in which they demanded $750 to approve the amendment to the ordinance authorizing the purchase. His testimony takes up more than six pages of the transcript of the record and is full and convincing.

Finally, witness Cándido L. Prado, a druggist, testified that he heard a certain conversation which took place in a private apartment of his drug store between Agustín Díaz Smaine and defendant Benítez, in which Benítez said to Díaz that he could give him any kind of a note for the money he asked for himself but that he would have to pay the amount demanded by the other defendant, Luis, in cash.

This, in brief, is the evidence for the prosecution. All the efforts of the defense in the cross-examination of the witnesses for the prosecution and in the direct examination

of their own witnesses tended to show that previous differences existed between the defendants and the witnesses; that the defendants had not made the alleged demands upon José Agustín Díaz or his son, and that if the approval of the amended ordinance was delayed it was due to legitimate circumstances.

The judge of the district court who heard all the evidence gave credence to the witnesses for the prosecution and found the defendants guilty. There is nothing to show that he erred in so doing and his judgment must be affirmed. The only objection which, in our opinion, could be made to his final judgment in this case would not be favorable but adverse to the defendants. We refer to the penalty imposed on the defendants which is perhaps not sufficiently severe in view of the acts committed by them.

The appeal should be dismissed and the judgment appealed from

*Affirmed.*

Chief Justice Hernández and Justices Wolf, Aldrey and Hutchison concurred.