## J. J. SHEPHERD v. STATE.

No. A-3488.    Opinion Filed Sept. 8, 1920.

(192 Pac. 238.)

(Syllabus.)

1. **JUDGMENT AND SENTENCE—Conformity to Charge in Information—Gambling.** The offense of opening or conducting or carrying on either poker, roulette, craps or any banking or percentage or gambling game for money, checks, credits or any representatives of value, as defined by section 1, c. 26, Laws

1916, is a felony. By section 6 of said act the keeping of any house, room, or place where any of the games prohibited by said section 1, are opened, conducted, or carried on, is a felony. The information charged a violation of section 1; the verdict was guilty as charged in the information; the judgment of conviction was for "keeping and maintaining a gambling house." Held, the judgment is void, as it was for a crime other than the one charged.

2. **EVIDENCE—Corroboration of Accomplice—Gaming.** Under section 13, c. 26, Laws 1916, entitled "An act relating to gambling," the uncorroborated testimony of an accomplice is sufficient to sustain a conviction.

3. **TRIAL—Comments of Judge—Reversible Error.** An improper remark of the trial judge, while overruling an objection to evidence offered, which was, in effect, a comment upon a material fact, prejudicial to the defendant, held, to be reversible error.

*Appeal from District Court, Ottawa County;*
*Geo. C. Crump, Assigned Judge.*

J. J. Shepherd was convicted of maintaining a gambling house, and he appeals. Reversed with directions.

*T. J. Sargent, R. J. Shive, Hainer & Ballinger, A. C. Towne,* and *J. W. Bartholomew,* for plaintiff in error.

The Attorney General and *W. C. Hall* and *E. L. Fulton,* Asst. Attys. Gen., for the State.

DOYLE, P. J. The plaintiff in error, J. J. Shepherd, prosecutes this appeal from a judgment of the district court of Ottawa county, sentencing him to serve a term of seven years' imprisonment in the penitentiary and to pay a fine of $1,000, for "the crime of keeping and maintaining a gambling house," rendered upon a verdict finding him "guilty as charged in the information," and requesting the court to assess the punishment.

The information in substance charges that one Frank Stanley and J. J. Shepherd did, in Ottawa county, on or

about the 20th day of ·Febuary, 1918, willfully, unlawfully, and feloniously set up and operate for hire, profit, and gain, in a certain two-story building located on the north side of Main street in the town of Tar River, certain games of chance, to wit, poker, then and there played with packs of ordinary playing cards, at which and on the result of the varying chances of said games money and other credits and representatives of value were then and there wagered and bet by divers persons unknown.

The information was filed in the district court on the 26th day of September, 1918. The defendant was arraigned October 14th, and the case was called for trial October 16th, at which time on motion of the county attorney the case as to the defendant Frank Stanley was dismissed. Thereupon the defendant moved to set aside the information because he had had no preliminary examination. The motion was overruled and exception reserved. Thereupon the defendant interposed a plea of former jeopardy, and objected to going to trial because the case was set for trial before his plea was entered, which objection was overruled and the case was called for trial.

Frank Warner, the first witness for the state, testified:

"I am deputy sheriff, and acted in that capacity during the month of February, this year. On or about the 20th day of February, this year, I arrested J. J. Shepherd, Frank Stanley, and R. J. Bland, in a room in the rear of a barber shop in Tar River, for playing poker. My brother was with me. I went to the front door of the barber shop, and my brother went to the back door. I walked in, and Shepherd and another fellow came out of the little room in the rear. Shepherd had money in both hands. I asked them to go back in the rear room with me. I found a round table

with a blanket on it, and I saw playing cards and some money on the table. We arrested Shepherd and Stanley and took them before Hartley, a justice of the peace, and they paid fines for playing poker."

On cross-examination he stated that this transaction did not occur in the upper story of a certain two-story frame building located on the north side of Main street; that he did not know who owned the building where he arrested these parties or who had it leased, or who owned the tables and the cards, and he did not know who was running the gambling house; that Frank Stanley is the same Stanley whose name appears as codefendant.

Charley Warner testified:

"I am a deputy sheriff, and the complaining witness in this case. I was with my brother Frank when Shepherd and the others were arrested for gambling. They were playing poker. When we took them to the justice of the peace, Shepherd said, 'There is no use of all us fellows paying fines; let me and Stanley pay fines, and we will pay the costs in all the cases;' and Stanley and Shepherd paid fines."

A. D. Hartley testified:

"I am justice of the peace in district 15, Ottawa county. I know J. J. Shepherd and Frank Stanley. February 20, 1918, J. J. Shepherd paid the fines entered on pleas of guilty of playing poker by him and Frank Stanley, of $25 each, and the costs, amounting in all to $69.30."

Frank Stanley testified:

"I live at Scammon, Kansas. I was codefendant in this case. I was living at Tar River on February, 1918; I was running a rooming house there. It was a two-story building and I had a one-story barber shop. There was a narrow space between the rooming house and the barber shop.

I had control of both places. I subleased the barber shop to Earl Conklin, and there was a small room in the back of the barber shop I was not using, which I leased, three or four days before it was raided, to J. J. Shepherd; he said for a poker game. I played stud poker there and Shepherd played in the game. I was a little winner in the games I played. Shepherd took the take-off, and conducted the game, as I understood it."

On cross-examination he stated that he leased the building from Guy Lawyer; that Shepherd did not lease it for any specified time; that Shepherd did not pay him any rent, but his wife told him that Shepherd paid her $5.

Mrs. Frank Stanley testified:

"I am the wife of Frank Stanley. I was running the rooming house, and J. J. Shepherd roomed at my house. He paid me the rent for his room, and one day he handed me $5, and told me to give it to Frank; 'Frank will know,' or something to that effect. I leased the rooming house from Mr. Man, and Guy Lawyer owned the barber shop building. I had nothing to do with it."

As a witness in his own behalf J. J. Shepherd testified:

"I know where the building is located where this offense is charged. I rented a room in Stanley's lodging house for $3 a week. The barber shop building belongs to Guy Lawyer's wife, who owned the garage next door. She told me Frank Stanley had it rented. I did not lease or sublease any part of that building for any purpose. I had nothing to do with it, and I did not open a gambling house or conduct a gambling game there, or anywhere else in the county. I played poker with Stanley about three times in the back room, and was arrested there with the others by Frank and Charley Warner. When I was moving to Joplin I paid Mrs. Stanley $5 I owed her for my room rent. Frank Stanley sold whisky in the rear room of the barber shop and run a poker game there."

Cross-examination:

"Q. Along about that time you was a publisher of a publication known as the 'Rounder?' A. Yes, sir.

"Q. Examine this, and see if it is volume 1, No. 1, of your publication known as the 'Rounder.' A. Yes, sir (The paper is marked 'Exhibit A', and a particular article therein is offered. Defendant objects as incompetent and not proper cross-examination.)

"The Court: Overruled. Read it to the jury; that part is admitted with reference to the defendant setting up and running a gambling house at Tar River. (The county attorney reads the article.)

"Q. This is the truth is it? A. I wrote that piece.

"The Court: What was your business, Mr. Shepherd, prior to the 20th of February? A. I had been working for the government up there at Funston for several months.

"The Court: What was your business at Tar River? A. I just came to Tar River; I was not in any business.

"The Court: How did you make a living? A. I had money; I had been working for seven or eight months for the government.

"The Court: Where? A. At Camp Funston.

"Q. And what did you mean when you said 'My partner and myself declared that we would not pay $75 a month'? A. What I meant by me and my partner—

"The Court: I think we can expedite matters if you will read that article to the jury. (Here the county attorney reads the article headed: 'Gamblers, Cocaine Sellers and Bootleggers at War,' which covers a dozen pages of the record and purports to be an exposure of an alleged exclusive bootlegging and gambling trust or ring that paid for official protection in the mining towns of the county)."

Redirect:

"Q. You wrote this article for the purpose of exposing the gambling law violations up in that district, didn't you? A. Yes. (The state objects and asks that it be stricken.)

"The Court: Stricken."

The first contention on the part of the defendant is that the evidence is insufficient to sustain the verdict of conviction. The only evidence showing or tending to show that the defendant opened and conducted a game of poker was the testimony of Frank Stanley, an accomplice. Section 13 of chapter 26, Session Laws 1916, entitled "An Act relating to gambling," reads:

"Any person charged with a violation of any of the provisions of this act may be convicted on the uncorroborated testimony of an accomplice, and the judgment thereon shall not be set aside or reversed by reason of the fact that such conviction was based on the testimony of an accomplice."

By this provision this court is forbidden to reverse a judgment of conviction on the ground that the uncorroborated testimony of an accomplice is insufficient to sustain a conviction.

There were exceptions to remarks made by the court during the course of the trial in the presence of the jury. It appears that, in overruling the defendant's objection to the paper offered in evidence, the court remarked: "Read it to the jury; that part is admitted with reference to the defendant setting up and running a gambling house at Tar River." This remark of the court was clearly a comment on the weight of the evidence, and was therefore improper and prejudicial. It was for the court to pass upon the admissibility of the evidence offered, but it was the prov-

ince of the jury to pass upon its weight, uninfluenced by the court.

It is also contended that the court erred in its instructions, and particularly in misstating the issue. The fifth instruction given by the court is in part as follows:

"If you find from the evidence that Frank Stanley was a partner or participated in running a gambling house for money or other representatives of value, which the defendant Shepherd was interested in, then in that event you will find the witness Stanley was an accomplice; and, while the defendant can be convicted upon the uncorroborated testimony of an accomplice," etc.

Instruction No. 6 is as follows:

"You are further instructed that if you find from the evidence or entertain any reasonable doubt thereof that the defendant, J. J. Shepherd, did not open up or conduct a gambling house, as charged in the information, then it will be immaterial, so far as this case is concerned, that the defendant was arrested and paid a fine for gambling, and in this connection you are instructed that if the defendant J. J. Shepherd merely played at a game of poker for money whether he won or lost would not be material, and the fact that he paid a fine for playing poker should not in any manner be considered by you, unless you find from the evidence beyond a reasonable doubt, that the defendant is guilty, as charged in the information of opening and conducting a gambling house."

The information does not charge the crime of "running, or of opening and conducting a gambling house, as stated in these instructions." It charges the crime of opening and conducting a gambling game as defined by section 1 of chapter 26, Session Laws 1916.

It follows that these instructions are clearly in violation of the universally accepted doctrine and the fundamental

principle of law that a person may not be convicted of any offense other than the one charged, or an offense necessarily included as a matter of law. *Koontz v. State*, 10 Okla. Cr. 553, 139 Pac. 842, Ann. Cas. 1916A, 689.

It is also contended that the punishment imposed is excessive. It is both the spirit and intention of our laws that sentences shall be imposed in criminal cases for the protection of society and the reformation of the criminal, and sentences should be imposed in keeping with the spirit of the law. It is manifest that the trial judge imposed a sentence of excessive severity.

The record further shows that the court rendered judgment, finding the defendant guilty of a crime different from that charged in the information. The statement of the offense in the judgment and sentence is as follows:

"J. J. Shepherd, defendant, being personally present in open court and having been legally convicted by verdict of jury and arraigned, and having pleaded not guilty to the crime of keeping and maintaining a gambling house charged in said information, and having been then and there in said court duly and legally tried and convicted of said crime."

While no exception was taken to the judgment, obviously upon the record in this case the judgment of conviction was and is erroneous and void.

Other questions are raised, but we forbear from further discussion of this case. Enough has been said. It is evident from this record that the defendant did not have a fair and impartial trial.

In view of the fact that the defendant has served more than a year of the sentence imposed, the district

court of Ottawa county is directed to dismiss the case. The judgment is reversed, and the case remanded. with direction to proceed in accordance with the views herein expressed.

The warden of the penitentiary at McAlester will deliver the defendant to the sheriff of Ottawa county, who will hold him in custody until otherwise ordered according to law.

ARMSTRONG and MATSON, JJ., concur.