ED. W. SPIVEY v. STATE.

No. A-9668. June 13, 1940.
(104 P. 2d 263.)

400

406

408

412

414

416

418

420

422

Dudley, Hyde, Duvall & Dudley, of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis R. Morris, Co. Atty., and John F. Eberle, Asst. Co. Atty., both of Oklahoma City, for the State.

DOYLE, P. J. Appellant, Ed. W. Spivey, was tried and convicted in the district court in and for Oklahoma county, for having accepted a bribe as a member of the

board of education of the city of Oklahoma City, and was sentenced to imprisonment in the state penitentiary for the term of ten years.

The assignments of error are that the court erred in overruling the motion to quash the indictment and in overruling the demurrer thereto; that the verdict of guilty is not sustained by sufficient evidence, and is contrary to law, in that the conviction was had upon the uncorroborated testimony of self-confessed accomplices. Other assignments relate to alleged errors of law occurring during the trial, in the admission of evidence, the refusal of the court to give to the jury certain instructions requested by appellant; and the giving of certain instructions over the objections of appellant.

The alleged errors have all been examined and such of them as we deem worthy of notice will be considered and disposed of in the order of presentation here.

The indictment in this case is drawn under Penal Code, Sec. 1907, 21 Okla. St. Ann. § 382, which is as follows:

"Every executive, legislative, county, municipal, judicial or other public officer, or any person assuming to act as such officer, who corruptly accepts or requests a gift or gratuity, or a promise to make a gift, or a promise to do an act beneficial to such officer, or that judgment shall be given in any particular manner, or upon a particular side of any question, cause or proceeding, which is or may be by law brought before him in his official capacity, or as a consideration for any speech, work or service in connection therewith, or that in such capacity he shall make any particular nomination or appointment, shall forfeit his office, be forever disqualified to hold any public office, trust or appointment under the laws of this state, and be punished by imprisonment in the state penitentiary not exceeding ten years, or by fine not exceeding five thousand dollars and imprisonment in jail not exceeding one year."

The statute defining the term "bribe" reads:

"The term 'bribe' signifies any money, goods, right in action, property, thing of value or advantage, present or prospective, or any promise or undertaking, asked, given or accepted, with a corrupt intent to influence unlawfully the person to whom it is given, in his action, vote or opinion, in any public or official capacity." Penal Code, sec. 1777, 21 Okla. St. Ann. § 97.

The first contention is that the court erred in overruling his motion to quash the indictment.

In his brief it is said:

"In this motion he takes the position that there was no legal, material, relevant or competent evidence before the grand jury, and that he could not be convicted upon the uncorroborated testimony of these three confessed bribe givers, and that neither one could corroborate the other, and that by eliminating their testimony, the evidence before the grand jury was wholly insufficient to justify the returning of said indictment."

In the Code of Criminal Procedure the grounds upon which an indictment may be set aside upon the motion of a defendant are clearly defined. Sec. 2937, 22 Okla. St. Ann. § 493.

Before a defendant in a criminal action is entitled to be heard on a motion to set aside an indictment, he must bring himself clearly within the provisions of the Code of Criminal Procedure. State v. Barnett, 60 Okla. Cr. 355, 69 P. 2d 77.

The motion to quash does not set forth any of the statutory grounds as provided by section 2937, supra.

Our statute provides:

"The common law, as modified by constitutional and statutory law, judicial decisions and the condition and wants of the people, shall remain in force in aid of the

general statutes of Oklahoma" etc. Sec. 2, 12 Okla. St. Ann. § 2.

At the common law, an indictment is invalid and may be quashed where it is found and returned by a grand jury not legally constituted, or where there was no legal and competent evidence before the grand jury upon which it was based; and this invalidity might be shown upon a plea in abatement. Hayes v. State, 3 Okla. Cr. 1, 103 P. 1061.

Under the statute, sec. 2, supra, and the provisions of the Code of Criminal Procedure, the motion to quash and set aside an indictment takes the place of the plea in abatement at common law, a plea the subject matter of which may be any objection which could not be properly interposed by a plea in bar.

These provisions do not qualify or change the rule of the common law requiring that an indictment must be found on legal and competent evidence.

The question of the competency or incompetency of accomplice witnesses before a grand jury is not a question that can be raised on a motion to quash the indictment. Whether or not a witness is an accomplice may be, according to the circumstances, a question for the court or jury. Generally speaking, however, it is a question of fact for the jury, but where the acts and conduct of the witness are admitted, it becomes a question of law for the court to say whether or not those acts and facts make the witness an accomplice. Cudjoe v. State, 12 Okla. Cr. 246, 154 P. 500, L. R. A. 1916F, 1251. And see 14 Am. Jur., Criminal Law, Sec. 110.

It may be said in passing that the law prescribes no standard for the strength of corroborating evidence, and there is a failure to corroborate only if there be no evidence

legitimately having that effect. Underwood v. State, 36 Okla. Cr. 21, 251 P. 507.

An examination of the evidence taken before the grand jury, introduced on the hearing had on the motion to quash, leads to the conclusion that, unexplained or uncontradicted, it would be sufficient to warrant appellant's conviction upon a trial upon the indictment. In our opinion this contention is wholly without merit, and the trial court did not err in overruling the motion to quash the indictment.

The second contention is that the court erred in overruling the demurrer to the indictment, for the following reasons:

"(1) That the same does not state facts sufficient to constitute the offense of bribery as therein charged, or any public offense.

"(2) That said indictment is so indefinite and uncertain that the same does not sufficiently advise the defendant of the nature of the alleged offense therein charged."

Another ground upon which appellant demurred, and the only one supported in the brief by the citation of authority and argument, is that he is not an officer within the purview of Penal Code, sec. 1907, supra, and in his brief says: "This section does not cover the board of education or the members thereof, and the defendant is not subject to prosecution thereunder, and his demurrer to the indictment should have been sustained." With this contention we cannot agree.

We think this section needs no construction. It is as plain as the aptest collocation of words can make it. It reads in part as follows:

"Every executive, legislative, county, municipal, judicial or other public officer, or any person assuming to act

as such officer, who corruptly accepts or requests a gift or gratuity or a promise to make a gift or a promise to do an act beneficial to such officer. * * *"

In the case of State v. Sowards, 64 Okla. Cr. 430, 82 P. 2d 324, 325, this court held:

"A 'public office' is a right, authority and duty created and conferred by law, by which for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public, and the individual so invested is a 'public officer.' "

In the case of State v. Womack, 4 Wash. 19, 29 P. 939, the Supreme Court of Washington held:

"A member of the board of education is an executive officer, and comes within the meaning of Code 1881, §§ 879, 880, which provides a punishment for attempting to bribe an executive officer."

In the case of State v. Loechner, 65 Neb. 814, 91 N. W. 874, 59 L. R. A. 915, the Supreme Court of Nebraska held:

"A member of a board of education of a school district in a city having a population of over 1,500, organized under the provisions of subdivision 14, c. 79, Comp. St., is a ministerial officer within the meaning of the term as used in section 180, Cr. Code, providing for the punishment of certain public officers for malfeasance in office."

In the opinion it is said:

"From a careful consideration of the subject in its different aspects, we are constrained to the view, as appears from what has been said, that the defendant belongs to the class of officers denominated 'ministerial,' and for that reason is included within the fair import of the language of the section of the Criminal Code under which the indictment was found.

"It is urged by the defendant that the question we are considering has been decided by the Supreme Court of

Washington (State v. Womack, 4 Wash. 19, 29 P. 939) adverse to the conclusion we have just reached. We have given that case careful consideration, and do not regard it as conflicting with the views herein expressed."

Appellant in his supplemental brief cites the case of Sheely v. People, 54 Colo. 136, 129 P. 201, and quotes the eleventh paragraph of the syllabus, which reads:

"Rev. St. 1908, § 1720, making one guilty of bribery who gives any sum to any ministerial or judicial officer, etc., with intention to influence him, should be strictly construed as against the state and liberally in favor of the accused, consonant, however, with ascertaining the legislative intent."

The sixth paragraph of the syllabus reads:

"Officers that are neither judicial nor legislative necessarily belong to the executive department of government, and are 'executive' or 'administrative' officers; those terms being equivalent."

The seventh syllabus reads:

"The legislative intent should be sought in the ordinary meaning of the words of the statutes, construed in view of the connection in which they are used and of the evil to be remedied."

In the opinion it is said:

" 'Ministration' in Webster's Dictionary is said to be 'the act of ministering,' and 'minister' is defined to mean 'administer.' And in the same dictionary one of the synonyms of 'administer' is 'minister,' and 'administerial' is defined as 'pertaining to administration or to the executive part of the government.' Now the fact that these executive, administrative, or ministerial officers may and do exercise discretion and judgment in varying degree in the discharge of their administrative duties does not make them the less ministerial; for, if it did, there would be few administrative or ministerial officers. Most of them would be excluded, and would have to be placed in a class that has not yet been defined by the authorities. The ad-

ministration of government often requires in a large degree the exercise of discretion and judgment. * * *

" 'The character of the act does not depend on the amount of discretion confided to the officer. There is much reason for saying that under our Constitution all administrative or ministerial duties are executive in character, as they not only can be nothing else under the Constitution, but they are all acts in the conduct of the government; i. e., the administration of public affairs through and under the regulations prescribed by law.' In State v. Loechner, supra, the statute under consideration provided that 'any clerk, sheriff, coroner, constable, county commissioner, justice of the peace, recorder, county surveyor, prosecuting or district attorney, or any ministerial officer' who was guilty of certain acts should be fined, etc. A member of a board of education of a school district in a city was held to come under the provisions of the statute as being a ministerial officer. The duties of a member of the school board, as related to his district, were analogous to the duties of a county commissioner in this state, as related to his county, as is shown by the following quotation from the opinion: "The members of the school board are unquestionably regarded by statute as the servants or agents of the corporation, selected for the purpose of conducting and managing its affairs in the manner and under the restrictions pointed out by statute. They are an administrative body charged with the duty of administering the law governing the public schools within the city composing the school district of which they are officers. It is their duty to administer the affairs of the corporation as directed by statute in the exercise of such powers and authority as are vested in them. Doubtless in many instances in the performance of their duties they may exercise a discretion or judgment quasi judicial in character, but this fact alone cannot determine the class to which they belong, or bring them in the category of judicial officers.' From this the court held that the member was an administrative officer, and proceeded to show that the word 'ministerial' in the statute meant the same thing as 'administrative,' and that, therefore, the defendant belonged

to the class of officers designated as 'ministerial,' and came within the statute."

Penal Code, sec. 2458, 21 Okla. St. Ann. § 279, provides:

"The various provisions of this article which relate to executive officers apply in relation to administrative officers in the same manner as if administrative and executive officer were both mentioned together."

It follows from the foregoing review that a member of the board of education of Oklahoma City is a public officer.

The indictment is full and definite in alleging the things done, and the facts stated include every essential element of the crime of bribery as defined by Penal Code, section 1907, supra. It is clearly sufficient and the trial court did not err in overruling the demurrer thereto.

Several assignments of error are based on exceptions taken to the action of the court in the admission of evidence as to other and alleged independent crimes committed by appellant.

The rule is well settled that evidence of the commission of other crimes is admissible when it tends corroboratively or directly to establish the defendant's guilt of the crime charged in the indictment on trial, or some essential ingredient of the offense.

In 11 C. J. S., Bribery, page 869, § 14, it is said:

"As bearing on the corpus delicti, evidence of a general conspiracy to secure bribes is admissible. So, it is competent to show the relationship, understanding and common purpose of several defendants. Likewise, as bearing on the corpus delicti, it is permissible to introduce all competent testimony going to show that the person alleged to have been bribed actually received a bribe as charged, or did not receive a bribe as claimed by the defense."

In the recent case of Boyer v. State, this court held:

"Evidence of other offenses is competent to prove the specific offense charged when it tends to establish a systematic scheme or plan embracing the commission of two or more offenses, so related to each other that proof of one tends to establish the other, or to connect the defendant with commission of the offense charged." 68 Okla. Cr. 220, 97 P. 2d 779, 781.

The principal question in this appeal is set forth in appellant's brief as follows:

"Third Proposition: Assuming that the defendant cannot be convicted upon the uncorroborated testimony of Watts, Estes and Smith, and that neither one can corroborate the other, then under the usual test their testimony was not corroborated. Assignment of errors Nos. 1, 5, 6, 7, 39, 40, 41, 42, 43, 47." and counsel state:

"We will not here review the evidence independent of said accomplices, for the reason that we have in a general way, in our statement, set out the substance thereof, and when the testimony of these three accomplices is eliminated there is nothing left to bring the case within the above rule." Citing McNack v. State, 62 Okla. Cr. 285, 71 P. 2d 317.

Counsel for the state in their brief state:

"Third Counterproposition: Watts, Estes and Smith are bribe givers, but they are not accomplices in the demanding and receiving of the bribe under the record here, and by express provisions of section 1916, O. S. 1931, 21 Okla. St. Ann. § 391, their cumulative testimony is sufficient to convict." And in their brief say:

"There is no proof in this record of a conspiracy between witnesses, Watts, Estes and Smith, and the defendant Spivey, Price and Wilkins to give and receive a bribe in this case. The bribe giver simply acquiesced in the demand of the bribe taker for the payment of the bribe money as an absolute condition to the consummation of the deal for the Northeast high school royalty, based upon a legitimate bid therefor.

"We submit that the testimony of Dodson, Alder, Eckroat, Duff and Otto Rose, corroborates the testimony of Watts, Estes, and Smith.

"In addition to the above corroborative witnesses, we have in this, the Spivey case, the testimony of E. C. Clay, J. Lane Wilson, Dan R. (D. R.) Cummings, Martin Cummings, M. O. Mulvey, R. L. Scott and William Gill.

"Dan R. (D. R.) Cummings and his son, Martin Cummings, were not accomplices of Watts, Estes and Smith in the Northeast high school royalty transaction, but here again, we have the defendant, Spivey, receiving and collecting a bribe of $6,829.50 in connection with his official acts as a member of the board of education. Dan. R. Cummings corroborated Martin Cummings and both were corroborated by M. O. Mulvey, teller in the First National Bank & Trust Company, who cashed the $6,829.50 check for Martin Cummings.

"Here again we have separate and independent evidence showing that this defendant was engaged in a general plan and scheme of bribery, and that the Northeast high school royalty transaction, as testified to by Watts, Estes and Smith, fits perfectly into said bribery scheme, and was a part of the same, and, therefore, the testimony of Dan R. Cummings, Martin Cummings and M. O. Mulvey corroborates the testimony of Watts, Estes and Smith."

In 14 Am. Jur., Criminal Law, sec. 108, it is said:

"The words 'accomplice,' 'accessory,' and 'aider and abettor' are often used indiscriminately and interchangeably by courts and textbook writers on criminal law. More accurately, the term 'accomplice' is used to define a situation from which certain collateral consequences flow, such as the need of corroboration of the testimony of an accomplice or the competency of an accomplice as a witness. It is commonly applied to a witness; it is not so often used in describing a person accused of crime. Usually, when persons are spoken of by courts in connection with the commission of an offense, they are mentioned as principals, accessories, or aiders or abettors; but if, in the course of the trial, any of these persons is

put upon the witness stand and a question comes up as to the necessity of corroborating his testimony, he will be spoken of as an accomplice, although he may in fact be a joint principal, an accessory, or an aider and abettor."

In 8 Am. Jur., Bribery, sec. 33, it is said:

"In bribery, as in other crimes, the testimony of an accomplice is admissible. It should be weighed by the same rules as those by which the testimony of other witnesses is weighed—that is, by considering the accomplice's connection with the crime and with the defendant, his interest in the case, his appearance on the witness stand, the reasonableness of his testimony, and its consistency with other facts proved in the case. In many jurisdictions the common-law rule permitting conviction upon the uncorroborated testimony of an accomplice has been changed by statute; and where this is true, a person accused of bribery cannot be so convicted. The test as to whether a witness is an accomplice is whether he himself could be convicted as a principal or accessory."

The common-law rule permitting conviction upon the uncorroborated testimony of an accomplice has been changed by the statute. The Code of Criminal Procedure provides:

"Sec. 3071, 22 Okla. St. Ann. § 742. A conviction cannot be had upon the testimony of an accomplice, unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof."

Penal Code, sec. 2204, 21 Okla. St. Ann. § 953, provides:

"Any person charged with a violation of any of the provisions of this act may be convicted on the uncorroborated testimony of an accomplice, and the judgment thereon shall not be set aside or reversed by reason of the fact that such conviction was based on the testimony of an accomplice."

This section deals with a violation of the gambling laws. Shepherd v. State, 17 Okla. Cr. 630, 192 P. 238.

The minimum quantity of proof in bribery cases is fixed by Penal Code, 1916, 21 Okla. St. Ann. § 391, providing that:

"In all cases wherein the offering, giving or receiving of bribes is made criminal by the provisions of the penal code, the party to such crime who shall first furnish information in relation thereto, as against the other parties, and in any prosecution therefor, shall testify to the same, truthfully and fully, shall not thereafter be criminally liable therefor, but in such case no conviction shall be had on the uncorroborated testimony of one such witness."

Instruction No. 9, given in accordance with this section, reads as follows:

"9. You are further instructed that it is provided by the laws of this state that whoever corruptly gives, offers, or promises to any executive, legislative, county, municipal, judicial or other public officer or any person assuming to act as such, any gift or gratuity whatever, with the intent to influence his act, vote, opinion, decision or judgment, is guilty of a crime. It is further provided by law that in all cases wherein the offering, giving or receiving of bribes is made criminal by the provisions of the Penal Code, the party to such agreement who shall first furnish information in relation thereto, as against the other parties, and in any prosecution therefor, shall testify to the same truthfully and fully, shall not thereafter be criminally liable therefor, but in such case, no conviction shall be had on the uncorroborated testimony of one such witness. In this connection, the court instructs you that the witnesses E. P. Watts, S. LeRoy Estes and Roy M. Smith, under their own testimony in this case, are guilty of the commission of the crime of the giving of a bribe and you could not find the defendant Ed. W. Spivey guilty of the offense charged in this indictment upon the uncorroborated testimony of any one of such witnesses. However, if you find from the testimony of others, then one of such wit-

nesses, sufficient corroboration of his testimony as leads you to believe that he was telling the truth, then you may consider his testimony in connection with all the other facts and circumstances in the case, and, if from all the testimony in the case, including the testimony of one such witness, you find and believe from the evidence beyond a reasonable doubt that the defendant committed the offense charged in the indictment herein, then, you should so say by your verdict.

"In determining the question as to whether the testimony of a witness has been corroborated, you may eliminate his testimony entirely, and then examine all of the remaining testimony except that of such witness, and ascertain from such examination whether there is any evidence tending to connect this defendant with the offense for which he is charged in the indictment, and, if there is, then such witness is corroborated. You will apply this same rule of law to the testimony of D. R. Cummings and M. K. Cummings in relation to the purchase of the Northwest high school site. If the defendant was being tried as the receiver of a bribe in connection with the purchase of the Northwest high school site he could not be convicted upon the uncorroborated testimony of either one of such witnesses. If you find that the testimony of one of such witnesses has not been corroborated, then, you will not consider his testimony for any purpose whatsoever in this case.

"You will also apply the same rule of law in considering the testimony of the witness J. Lane Wilson and E. C. Clay in connection with the J. Lane Wilson transaction covering lots in Park Place addition to Oklahoma City and you will apply the same rule of law to the testimony of the witness E. P. Watts, and William Eckroat in relation to their attempted purchase of the Webster Royalty; also the testimony of the witness S. LeRoy Estes and Roy M. Smith in relation to their attempted purchase of the Webster royalty. Excepted to by defendant and exception allowed.

"Lucius Babcock, Judge."

The independent evidence tending to connect this defendant with the commission of the crime charged is in substance as follows:

The testimony of Earl P. Johnson shows the drawing of $6,000 in currency from the bank on the 17th day of September by Smith and the placing of this currency in a certain brief case, thereafter identified on the witness stand by Johnson as the same or a similar one. It shows the delivery of this brief case with currency therein to Smith at the bank and his departure therefrom.

The testimony of Harold Dodson discloses that this brief case was brought to the office of Frank Wilkins, co-defendant, in the possession of Smith and Estes; that there in the office Estes sat upon the brief case and when necessary to change his position tucked the brief case under his arm; that when the witness and Smith, together, left the office, Estes remained there and was still in possession of the brief case.

The testimony of Morris Alder established that on the evening of the same day, the bribe givers and bribe takers came together for some kind of a party at the Biltmore Hotel; that two rooms were rented and occupied during the evening, and that the extras charged to these rooms were paid by the defendant, Spivey.

The testimony of William Eckroat that he was to pay a $6,000 bribe on the Webster royalty corroborates the testimony of E. P. Watts relative to the Webster royalty bribery transaction.

The testimony of Dahl Duff, a reporter for the Oklahoma Publishing Company, was that Spivey made a motion that the Webster royalty be sold to William Eckroat.

The testimony of E. C. Clay, J. Lane Wilson, Dan R. (D. R.) Cummings, Martin Cummings, M. O. Mulvey,

R. L. Scott and William Gill was independent evidence, and, therefore, could not be accomplices. Their testimony corroborates the testimony of Watts, Estes and Smith in that it shows that the defendant, Spivey, took a bribe from Clay and Wilson in connection with the Park Place lease, and that the defendant, Spivey, was involved in a general bribery scheme and plan, a part of which was the Northeast high school royalty transaction, as testified to by Watts, Estes and Smith.

The testimony of Dan R. Cummings shows that he was having difficulty in getting the board of education to take action relative to the purchase of certain land. Finally the board, through the defendant, Spivey, permitted Cummings to name a board of appraisers, and about that time and before any price was agreed on, or contract signed, Cummings asked Spivey if he wanted anything out of the deal. Spivey said he did not know, and about a week later Cummings asked Spivey if 10 per cent would be sufficient, and Spivey said he would have to find out; that in a few days Spivey told Cummings that it was not satisfactory, but that they would go ahead with the deal; that Otto Rose, president of the board, did not think the 10 per cent was enough. Later, the price of $1,750 per acre was agreed upon; that thereafter, and on November 13, 1937, Cummings received his $73,710 warrant from the clerk of the board of education; and the same morning Spivey called Cummings on the telephone and asked him if he got the warrant. Cummings told Spivey he had gotten the warrant, and then Spivey asked if he could see him that morning; Cummings told Spivey "No", that he would come or send someone down there; that he would send it down; that he gave his son, Martin Cummings, a check for $6,829.50, with directions to get currency with the check, and give it to the defendant, Spivey.

438

Dan R. Cummings and his son, Martin Cummings, were not accomplices of Watts, Estes and Smith in the Northeast high school royalty transaction. Dan R. Cummings corroborated Martin Cummings, and both were corroborated by M. O. Mulvey, teller in the First National Bank & Trust Company, who cashed the $6,829.50 check for Martin Cummings.

There are many other facts and circumstances in evidence, but the foregoing independent evidence is sufficient to show, or at least tends to show, that Watts, Estes and Smith, accomplice witnesses, were corroborated in regard to appellant's connection with the commission of the crime charged.

In this connection it is well to remember that the well-established rule in this state is that it is not essential that the evidence corroborating an accomplice shall cover every material point testified to by the accomplice, or be sufficient alone to warrant a verdict of guilty. If the accomplice is corroborated as to some material fact or facts, by independent evidence tending to connect the defendant with the commission of the crime, the jury may from that infer that he speaks the truth as to all. Such corroborating evidence, however, must show more than the mere commission of the offense. Moody v. State, 13 Okla. Cr. 327, 164 P. 679; Davis v. State, 18 Okla. Cr. 453, 196 P. 146; Hollingshead v. State, 21 Okla. Cr. 306, 207 P. 104; Collins v. State, 28 Okla. Cr. 45, 228 P. 993.

It follows that instruction No. 9, above quoted, was more favorable to appellant than the law warranted; and as a whole the instructions given by the court fully and correctly covered the law of the case, and were as favorable to appellant as the law warranted.

This court has held repeatedly that it has no power to reverse a judgment of conviction upon the ground that the verdict is not supported by the evidence, unless there is no substantial evidence tending to show the guilt of the defendant, or the evidence fails so far to support the verdict that the necessary inference is that the jury must have acted from passion or prejudice, or have been controlled in reaching their verdict by undue influence. As we view the evidence in this case, it cannot with propriety and due respect for the law be held that there is an absence of competent evidence on which to base the conviction.

Finally it is urged that the punishment imposed is excessive.

The maximum punishment under the statute for the crime of bribery was fixed by the jury. It is true the sentence is severe, but the crime is grave and one which tends, probably more than any other, to sap the very foundation of all civil government.

It is for the Legislature, not for the courts, to determine what the punishment for crime shall be, provided it is neither cruel nor unusual.

The record fails to disclose that the jury was influenced by passion or prejudice, and upon the record before us we cannot say the jury abused its discretion in fixing the punishment.

Upon a careful examination of the voluminous record, and having considered the assignments of error argued orally and in the briefs, we are satisfied that no exception taken upon the trial is of any force or merit. Our conclusion is that appellant had a fair and impartial trial.

440

From what has been said it follows that the judgment of the district of Oklahoma county herein should be affirmed and it is so ordered.

BAREFOOT and JONES, JJ., concur.