E. P. "Chic" CARNEY, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12250.

Criminal Court of Appeals of Oklahoma.

Jan. 25, 1956.

Rehearing Denied Feb. 20, 1956.

Lewis F. Oerke and Leslie Pain, Lawton, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

The plaintiff in error, E. P. "Chic" Carney, defendant below, was charged by information in the District Court of Comanche County, Oklahoma, with the crime of feloniously keeping and managing, aiding and assisting, etc., a public nuisance to wit: the Jamboree Club wherein gambling games for money were openly conducted and carried on and persons congregated to play at said games, in violation of 21 O.S. 1951 § 946. The alleged crime was committed between the dates of July 1, 1954, and October 17, 1954, in the aforesaid county and state. He was tried by a jury, convicted, and his punishment fixed at six years in the state penitentiary. Judgment

and sentence were entered accordingly, from which this appeal has been perfected.

The defendant's first contention is that the evidence was insufficient to sustain the judgment, verdict, and sentence and that the conviction was based entirely on the uncorroborated testimony of the defendant's accomplice. The state concedes at the outset that the principal witness, Louis Brewer, was an accomplice. His testimony was to the effect that the Jamboree Club, located in Comanche County, was operated by E. P. "Chic" Carney, defendant herein, and that Carney was the boss during the time from July 1, to October 17, 1954. He further testified that people congregated there, among other things, for the purpose of gambling. He testified he was employed by Carney in the month of July, 1954; that his work consisted of working at the dice table by manipulation of the stick. Some times he acted as pay-off man and some times, "Chic" Carney acted as pay-off man. He related that entrance to the gambling room was through the men's rest room; that Carney told him when to open the game; and that practically every night, playing with dice ensued, for money. He further testified that there were card games in progress which, generally, consisted of black jack. He stated he kept count of the profits from the dice game from which he received one-third as compensation for his services. He stated that this division of the money took place in the office occupied by Carney.

Edwin A. Hartman, a soldier stationed at Ft. Sill, Oklahoma, testified that between the dates of July 1—October 17, 1954, he observed gambling in the room off the rest room; that there were both dice games and black jack games played for money; that most every time he was there, he saw "Chic" Carney; that he saw Carney in the back room one time when he, Carney, told J. B. Jackson, who was a black jack dealer, that he was wanted on the telephone, and that Carney took the cards from Jackson and left. Hartman testified that he engaged in gambling with the dice.

Victor Joseph Paradis testified that he was stationed at Ft. Sill during the time in question, and that he attended the Jamboree Club during the month of October, 1954, four or five times; that he gambled on four occasions; and on various occasions he saw "Chic" Carney. He testified that Louis Brewer normally operated the dice game and that Jackson normally operated the black jack game as a dealer. He said that on October 17, he went back into the game room and when he walked in, Jackson was dealing cards; that immediately he quit dealing and Carney took over dealing for approximately twenty minutes. He gambled at the Jamboree Club from July, 1954, to September, 1954. He related that he never won any money.

The defendant demurred to the evidence of the state and offered no evidence in his own behalf. It is apparent that the evidence is entirely sufficient to sustain the jury's verdict, not only as to the violation itself, but on the matter of corroboration of Louis Brewer. In Blumhoff v. State, 72 Okl.Cr. 339, 116 P.2d 212, 213, we said:

"Evidence corroborative of an accomplice need not directly connect the accused with the commission of the crime. It is sufficient, although circumstantial, if such evidence tends to connect him with its commission.

"The testimony of an accomplice to sustain a conviction need not be corroborated in every particular in detail. The rule is that the testimony of an accomplice must be corroborated by such other evidence of material parts of his testimony as will tend to connect the defendant with the commission of the offense.

"Where the sufficiency of the evidence to corroborate an accomplice is challenged, this court will take the strongest view of the corroborating testimony that such testimony will warrant, and, if it can say that there is corroborating evidence tending to connect the defendant with the commission of the offense, it will uphold the verdict."

The defendant contends, however, that the two soldiers who gave corroborating

testimony to that of Brewer, were themselves accomplices.

"The test as to whether a witness is an accomplice is whether he himself could be convicted as a principal or accessory."

8 Am.Jur., Bribery, § 33, Spivey v. State, 69 Okl.Cr. 397, 433, 104 P.2d 263. Certainly the two soldiers, under the statute herein involved, could not be convicted as a principal or accessory, for they were not managing, aiding or assisting in keeping or conducting said gambling games.

■ Moreover, under the provisions of 21, O.S.1951 § 953, no corroboration of Louis Brewer would be necessary in this case, for in said section it is provided that a judgment against one charged, as Carney is herein, " * * * shall not be set aside or reversed by reason of the fact that such conviction was based on the testimony of an uncorroborated accomplice." This statute has been upheld in Shepherd v. State, 17 Okl.Cr. 630, 631, 192 P. 238, in an opinion written by the late Judge Doyle. The defendant attacks the constitutionality of this provision of the statute, but in face of the clear evidence of corroboration herein, it is not necessary for us to consider such constitutional question.

■■ The defendant next contends that the court erred in admitting the evidence of a lease covering the tract of land therein described. It is conceded by the state that there was no evidence to show that the property described in that lease was the property known as the Jamboree Club and therefore its admission in evidence was improper, but harmless error. It was not necessary to establish the ownership of the Jamboree Club, since the evidence was ample to support the charge herein; that he was managing or aiding or assisting in the management of the Jamboree Club, a gambling institution.

■ Finally, the defendant contends that the court erred in overruling his motion for a new trial on the grounds that one of the jurors failed to disclose his interest in a juvenile complaint. In this regard, the evidence clearly discloses that the juror correctly answered the question propounded to him on voir dire examination when he stated he had had no dealings with the county attorney's office. He was not interrogated concerning any other officers. The fact that he had contact with the juvenile officer under the county judge's jurisdiction, which fact he did not disclose, did not affect his qualification as a juror, or form the basis for challenge for cause. His contact either with the county judge or juvenile officer would not constitute business dealings with the county attorney's office or enforcement officers. The record shows there was no contact with the county attorney's office in regard to the matter in question or any other matter. The fact that the juror may have talked with Mr. Rice, the juvenile officer, and Judge Harper, the county judge, would not disqualify him for service as a juror in this case.

For all of the above and foregoing reasons, the judgment and sentence herein imposed is affirmed.

JONES, P. J., and POWELL, J., concur.

On Petition for Rehearing

PER CURIAM.

Upon further consideration of this cause upon *rehearing,* we have come to the conclusion that the ends of justice will be met by modifying the sentence imposed against the accused to a term of 3 years imprisonment in the penitentiary.

It is therefore ordered that the judgment and sentence be modified to a term of 3 years imprisonment in the state penitentiary and the judgment and sentence as thus modified is affirmed.

Mandate will issue immediately.