[No. 50372–9. En Banc. May 30, 1985.]

THE STATE OF WASHINGTON, *Respondent,* v. CHONG
SIM O'NEILL, ET AL, *Petitioners.*

*Herrmann & Levenson,* by *Ellsworth I. Connelly* and *Jeffrey D. Gross,* for petitioners O'Neill and Fowler.

*Neil J. Hoff,* for petitioner Bennett.

*James C. Buckley,* for petitioner Chu.

*William H. Griffies, Prosecuting Attorney, Chris Quinn–Brintnall, Chief Criminal Deputy, Barbara L. Corey–*

*Boulet* and *Gerald A. Horne, Deputies,* and *Rex N. Munger, Assistant Deputy,* for respondent.

ANDERSEN, J.—

## FACTS OF CASE

At issue here is the constitutionality of the bribery statute and the validity of electronic recordings made of conversations relating to bribes. The recordings, made during the course of a Pierce County vice investigation, were authorized by court order.

The amended information filed by the Pierce County Prosecuting Attorney in this case charges 23 counts of bribery, each count involving one or more of the five defendants.

Following extensive pretrial hearings, the trial court among other rulings declined to grant the defendants' motions to dismiss based on their claim that the bribery statute was unconstitutional, and also declined to suppress the taped recordings on which much of the State's case rests. Detailed findings of fact and conclusions of law were entered in connection with such rulings.

The defendants and the State then joined in seeking direct discretionary review of those orders by this court. Since it appeared that there were important issues of first impression concerning this and other pending prosecutions in this state, discretionary review was granted.[1]

The State's case is based on evidence obtained by the Pierce County Sheriff. First, he used an informant to infiltrate prostitution operations in Pierce County. Next, along with the continued use of the informant, the sheriff also used one of his deputies who pretended to be susceptible to the acceptance of bribes and who was then allegedly given substantial cash payoffs by the defendants to allow them to conduct prostitution operations.

After the investigation got underway, the sheriff's office contacted federal authorities and it was apparently felt that

[1] RAP 2.3; RAP 4.2.

both state and federal law violations were involved. In any event, it was agreed that a joint investigation would be appropriate. Thereafter, the informant reported separately to the sheriff's office and to the Federal Bureau of Investigation. The informant was first wired with a concealed transmitter or recorder and, as a result, 11 federally authorized intercepts were obtained by the FBI. These were not provided to the sheriff's office and the sheriff's office was not involved in obtaining them. Later, both the informant and the deputy sheriff who accepted payoffs were similarly wired by the sheriff's office, and it is their recorded conversations or intercepts with the five defendants which the defendants here seek to suppress as evidence.

All of the electronic recordings sought to be suppressed were obtained by the sheriff's office pursuant to written orders entered by the Superior Court of the State of Washington for Pierce County. The following order, the first one obtained, is illustrative of the 23 separate orders entered:

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF PIERCE

| | |
|---|---|
| IN THE MATTER OF AUTHORIZATION TO INTERCEPT AND RECORD COMMUNICATIONS OR CONVERSATIONS PURSUANT TO RCW 9.73.090 | No. 83–2–02945–2 ORDER AUTHORIZING INTERCEPT AND RECORDING |

To: [Deputy] #42 and members of the Pierce County Sheriff's Office Special Investigations Unit.

WHEREAS, sworn application having been made before me by [Deputy] #42, a commissioned law enforcement officer of the Pierce County Sheriff's Office, and full consideration having been given to the matter set forth herein, the court hereby FINDS:

(a) There is probable cause for belief that bribery is going to be attempted.

(b) There is probable cause for belief that communications or conversations relating to said offense(s) will take place and will be obtained as evidence through interception and recording as hereafter set forth;

(c) [Deputy] #157, one party to the expected communication or conversation, has given consent to intercept

and recording of same;

(d) Normal investigative techniques reasonably appear to be unlikely to obtain convincing, accurate evidence of the crime(s);

Now, Therefore, It Is HEREBY ORDERED THAT:

[Deputy] #42 and members of the Pierce County Sheriff's Office Special Investigations Unit, together with necessary technical assistance are authorized to intercept and record by any device or instrument the communications or conversations of Chong S. O'Neill and others present concerning commission of the offense of bribery occurring at or upon the following place: An area within Pierce County to be agreed upon by Chong S. O'Neill.

It Is FURTHER ORDERED that this authorization is effective 1600 hours, 6/22/83, and shall terminate upon (intercept and recording of the communications and conversations described above), or in any event upon the passage of seven (7) days from the effective date.

DONE 6/22/83.

/s/ Waldo Stone
Judge

Additional facts will be referred to where pertinent to the issue under consideration.

The following four issues are presented on discretionary review.

## ISSUES

ISSUE ONE. Is the bribery statute under which the defendants are charged (RCW 9A.68.010(1)(a)) unconstitutionally overbroad or vague?

ISSUE TWO. Are the Superior Court orders which authorized electronic eavesdropping of conversations between the defendants and the informant and deputy sheriff defective because they were not issued on the application of either the State Attorney General or the Pierce County Prosecuting Attorney?

ISSUE THREE. Can probable cause for issuance of a superior court order authorizing electronic eavesdropping be based on information obtained by federal officers through electronic eavesdropping conducted without prior court approval where such evidence would be admissible in evi-

dence in federal court under federal law but is inadmissible in evidence in a state court under Washington law?

Issue Four. Did the authority of the sheriff's office to conduct electronic eavesdropping, which had been granted by the first Superior Court order, terminate as soon as the initial conversation with the defendant O'Neill was recorded?

## Decision

Issue One.

Conclusion. Implicitly, if not expressly, the bribery statute (RCW 9A.68.010(1)(a)) requires a showing of corrupt intent, thus the statute is not overbroad. Nor is the statute vague, particularly as to persons charged with conduct such as that alleged here which is patently within the "hard core" of the bribery statute.

In the interest of readability, the citations in this opinion have been placed in the margin wherever feasible.

The defendants argue that the statute under which they stand charged violates the constitution because it is both overbroad and vague. It reads:

9A.68.010 Bribery. (1) A person is guilty of bribery if:
(a) With the intent to secure a particular result in a particular matter involving the exercise of the public servant's vote, opinion, judgment, exercise of discretion, or other action in his official capacity, he offers, confers, or agrees to confer any pecuniary benefit upon such public servant; . . .

 "'[O]verbreadth' goes to the question of substantive due process, *i.e.,* whether the statute in question is so broad that it may not only prohibit unprotected behavior but may also prohibit constitutionally protected activity as well." *Blondheim v. State,* 84 Wn.2d 874, 878, 529 P.2d 1096 (1975). Defendants argue, in effect, that since a person who might with some entirely innocent intent pay money to a public servant under circumstances that could be charged as bribery under the statute as written (and they offer a number of hypothetical examples), the statute is unconstitutionally overbroad.

As held in *State v. Stroh*, 91 Wn.2d 580, 585, 588 P.2d 1182, 8 A.L.R.4th 760 (1979), however, "an implied requirement that criminal intent be proved may be found in a statute, even though it contains no express requirement with respect to intent, upon the assumption that the legislature did not intend to enact an unjust law."[2] Manifestly, in enacting the bribery statute the Legislature did not intend to proscribe any innocent or constitutionally protected activity by it, but intended to cover only persons acting with a corrupt intent.[3] Since we construe this bribery statute as requiring proof of a defendant's corrupt intent, it is not overbroad.

"A statute is void for vagueness under the Fourteenth Amendment if it is framed in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application." *State v. White*, 97 Wn.2d 92, 98–99, 640 P.2d 1061 (1982). Defendants argue that since the Legislature has not defined the term "official capacity", it is vague and thus the entire bribery statute is rendered unconstitutionally vague. We disagree.

In the context in which the term "official capacity" is used in the bribery statute, it simply means that the public servant is acting within the scope of what he or she is employed to do as distinguished from being engaged in a personal frolic.[4] Persons of common intelligence can understand such a meaning so the statute is not void for vagueness on that account.

---

[2]*See State v. Prather*, 30 Wn. App. 666, 669, 638 P.2d 95 (1981). *See also Blondheim v. State*, 84 Wn.2d 874, 879, 529 P.2d 1096 (1975).

[3]RCW 9A.04.020(1)(b); 12 Am. Jur. 2d *Bribery* § 6 (1964); *State v. Womack*, 4 Wash. 19, 25, 29 P. 939 (1892); *State v. Smith*, 252 La. 636, 212 So. 2d 410 (1968); *Deehl v. Knox*, 414 So. 2d 1089 (Fla. Dist. Ct. App. 1982). *See also* RCW 9A.08-.010(1)(a); Washington State Crim. Just. Training Comm'n, *Revised Criminal Code Training Seminar Manual* § 9A.68 (compiled and edited by G. Golob & G. Mooney 1976).

[4]*United States v. Heliczer*, 373 F.2d 241, 245 (2d Cir., *cert. denied*, 388 U.S. 917 (1967); *United States v. Waylyn Corp.*, 130 F. Supp. 783, 786 (D.P.R. 1955).

Furthermore, even if the outermost boundaries of this statute may be imprecise, any such uncertainty has no relevance here where the payment of bribes to a police officer to allow prostitution is alleged, since such conduct falls squarely within the "hard core" of the statute's proscriptions.[5]

ISSUE TWO.

CONCLUSION. The orders authorizing electronic eavesdropping on the defendants' conversations with the informant and the deputy sheriff were issued on proper application. Since such orders are authorized under this state's "one party consent statute" (RCW 9.73.090(2)), it was appropriate that they be issued on the application of a police officer.

In order to put the specific question posed by this issue and the other remaining issues in proper perspective, it is helpful to first consider the statutory scheme designed to make it possible to control potential abuses of electronic eavesdropping while allowing its use for proper law enforcement purposes under statutory protective practices and subject to judicial supervision.

Justice Oliver Wendell Holmes once referred to uncontrolled electronic eavesdropping as a "dirty business".[6] When the United States Senate was considering passage of the Omnibus Crime Control and Safe Streets Act of 1968, the Senate's report on the need for a comprehensive federal law governing electronic surveillance stated the problem as follows:

No longer is it possible . . . for each man to retreat into his home and be left alone. Every spoken word relating to each man's personal, marital, religious, political, or commercial concerns can be intercepted by an unseen

---

[5]*Bellevue v. Miller*, 85 Wn.2d 539, 541, 536 P.2d 603 (1975); *State v. Zuanich*, 92 Wn.2d 61, 63, 593 P.2d 1314 (1979); *State v. Holmes*, 98 Wn.2d 590, 597–98, 657 P.2d 770 (1983).

[6]*Olmstead v. United States*, 277 U.S. 438, 72 L. Ed. 944, 48 S. Ct. 564, 66 A.L.R. 376 (1928), dissent by Holmes, J., 277 U.S. at 470.

auditor and turned against the speaker to the auditor's advantage.[7]

Scientific advancements in such areas as wiretapping (interception of wire communications—most frequently telephone communications), bugging (miniature electronic devices which overhear, broadcast or record a speaker's conversation) and wired informants and agents (one party to a conversation equipped with either a concealed transmitter or recorder)[8] have been followed in turn by federal and state legislation designed to protect against their abuse.

The federal act aimed at controlling such abuses is Title III of the Omnibus Crime Control and Safe Streets Act of 1968.[9] It is a comprehensive statute which regulates the use of, and procedure for, electronic surveillance. Among other things, it establishes standards of admissibility for electronic eavesdropping evidence in federal courts, sets nationwide minimum standards protecting against infringement upon the privacy of citizens by electronic surveillance methods and allows states to create statutory criteria in this field which are more protective of privacy rights than are federal standards.[10]

■ The statutes of this state which govern electronic surveillance, unlike their federal counterparts, were not adopted as a single comprehensive law. Instead, they were adopted and amended from time to time as required to deal with specific problems perceived by the Legislature, and sometimes in response to decisions of this court.[11] Thus, we

[7]S. Rep. No. 1097, 90th Cong., 2d Sess. 67, *reprinted in* 1968 U.S. Code Cong. & Ad. News 2154.

[8]J. Carr, *Electronic Surveillance* § 1.01[1], at 2, 3 (1977).

[9]Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90–351, Title III, § 802, 82 Stat. 212 (1968), *amended by* 18 U.S.C. § 2510 *et seq.* (1970).

[10]*State v. Williams*, 94 Wn.2d 531, 538, 617 P.2d 1012 (1980).

[11]*See Williams*, at 547; *State v. Kichinko*, 26 Wn. App. 304, 307–11, 613 P.2d

must consider the entire sequence of statutes relating to this subject, since legislative policies do change;[12] and in ascertaining legislative purpose, we will read together statutes which stand in pari materia as constituting a unified whole, to the end that a harmonious total statutory scheme evolves which maintains the integrity of the respective statutes.[13]

Electronic eavesdropping on private conversations is prohibited under Washington law unless it is with the consent of all parties to the conversation or comes within one of the exceptions specified by state statute.[14] Among these exceptions are interceptions obtained pursuant to court order. Two different types of court orders are authorized, each under a different statute. The statutes authorizing such orders were enacted at different times. Applying the rules of construction set forth above, we conclude that the two statutes authorizing court orders, while related, serve the separate purposes set forth below.

The first of these two statutes is RCW 9.73.040 which was enacted in 1967.[15] To obtain an order pursuant to this statute, it must first be shown that:

> (a) There are reasonable grounds to believe that national security is endangered, that a human life is in danger, that arson is about to be committed, or that a riot is about to be committed, and
> (b) There are reasonable grounds to believe that evidence will be obtained essential to the protection of national security, the preservation of human life, or the prevention of arson or a riot, and

---

792 (1980); *State v. Bonilla*, 23 Wn. App. 869, 873–74, 598 P.2d 783 (1979).

[12]*State v. Wright*, 84 Wn.2d 645, 650, 529 P.2d 453 (1974).

[13]*Wright,* at 650. *See also Williams,* at 547.

[14]RCW 9.73.030–.140; *State v. Wanrow*, 88 Wn.2d 221, 227–32, 559 P.2d 548 (1977).

[15]Laws of 1967, 1st Ex. Sess., ch. 93, § 2, p. 1821.

(c) There are no other means readily available for obtaining such information.

RCW 9.73.040(1) (part).

For convenience, this first statute will be referred to as the "no consent statute" since the electronic eavesdropping it permits is not limited by the statute to situations where one of the participants to the communication or conversation has consented to the eavesdropping. As the above quoted part of this statute makes clear, such an order may only be obtained in very limited situations. Furthermore, "the state attorney general or any county prosecuting attorney" is required to apply for such an order.[16] A court order obtained under this statute is effective for a maximum period of 15 days but may be renewed by the court where appropriate.[17]

The second statute is RCW 9.73.090(2) which was enacted in 1977, some 10 years later.[18] Under this statute electronic eavesdropping on an oral communication or conversation may be authorized by the court with the consent of any party to the communication or conversation; therefore, it will be referred to as the "one party consent statute". A court order may be obtained under this statute by "a law enforcement officer acting in the performance of the officer's official duties" and "if there is probable cause to believe that the nonconsenting party has committed, is engaged in, or is about to commit a felony . . ." RCW 9.73.090(2). An order obtained under this statute must be "for a reasonable and specified period of time," RCW 9.73-.090(2), and in no event can such an order be effective for longer than a 7-day period without being renewed by the issuing court upon an appropriate showing.[19] Subsequent

---

[16]RCW 9.73.040(1).

[17]RCW 9.73.040(6).

[18]Laws of 1977, 1st Ex. Sess., ch. 363, § 3, p. 1675.

[19]RCW 9.73.090(4).

notice to the subject of the electronic surveillance is also required as provided by statute,[20] as are reports thereon to the administrator for the courts.[21]

In order to obtain a court order authorizing electronic eavesdropping under this "one party consent statute", a detailed application under oath is required. The application must state:

(1) The authority of the applicant to make such application;

(2) The identity and qualifications of the investigative or law enforcement officers or agency for whom the authority to record a communication or conversation is sought and the identity of whoever authorized the application;

(3) A particular statement of the facts relied upon by the applicant to justify his belief that an authorization should be issued, including:

(a) The identity of the particular person, if known, committing the offense and whose communications or conversations are to be recorded;

(b) The details as to the particular offense that has been, is being, or is about to be committed;

(c) The particular type of communication or conversation to be recorded and a showing that there is probable cause to believe such communication will be communicated on the wire communication facility involved or at the particular place where the oral communication is to be recorded;

(d) The character and location of the particular wire communication facilities involved or the particular place where the oral communication is to be recorded;

(e) A statement of the period of time for which the recording is required to be maintained, if the character of the investigation is such that the authorization for recording should not automatically terminate when the described type of communication or conversation has been first obtained, a particular statement of facts establishing probable cause to believe that additional communications of the same type will occur thereafter;

---

[20]RCW 9.73.140.

[21]RCW 9.73.120.

(f) A particular statement of facts showing that other normal investigative procedures with respect to the offense have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous to employ;

(4) Where the application is for the renewal or extension of an authorization, a particular statement of facts showing the results thus far obtained from the recording, or a reasonable explanation of the failure to obtain such results;

(5) A complete statement of the facts concerning all previous applications, known to the individual authorizing and to the individual making the application, made to any court for authorization to record a wire or oral communication involving any of the same facilities or places specified in the application or involving any person whose communication is to be intercepted, and the action taken by the court on each application; and

(6) Such additional testimony or documentary evidence in support of the application as the judge may require.

RCW 9.73.130 (part).

The issues herein also require reference to the federal statutes on this subject. The most notable difference between federal statutes controlling electronic eavesdropping and our state statutes on the subject is that under federal law if one participant consents, then the police can record or electronically overhear a communication or conversation and the prosecutor can play the tape or elicit testimony as to what the police heard, without the necessity of first obtaining judicial approval.[22] As the United States Supreme Court recently held, "[n]either the Constitution nor any Act of Congress requires that official approval be secured before conversations are overheard or recorded by Government agents with the consent of one of the conversants." *United States v. Caceres,* 440 U.S. 741, 744, 59 L.

---

[22] 18 U.S.C. § 2511(2)(c). *See* C. Fishman, *Wiretapping and Eavesdropping* § 8 (1978).

Ed. 2d 733, 99 S. Ct. 1465 (1979).[23] On the other hand, as discussed above, even in one party consent situations a court order approving electronic eavesdropping is required under the law of this state. In the past, when state and federal law enforcement authorities have sought to cooperate in the investigation of crime and corruption in this state, this basic difference between the state and federal statutes has presented legal problems;[24] and as will be discussed shortly, it does so again in this case. In no consent situations, however, prior court approval of electronic eavesdropping is required by both federal[25] and state statutes.[26]

█ By federal statute, only "[t]he Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize an application . . ." 18 U.S.C. § 2516. Defendants argue that the body of case law which mandates strict construction of that federal statute requires, in turn, that we strictly construe the language of RCW 9.73.040(1) which allows orders to be issued "upon verified application of either the state attorney general or any county prosecuting attorney". On that basis, they ask this court to hold that only the elected attorney general or an elected prosecuting attorney can apply for such an order, and that we strike down the court orders authorizing electronic eavesdropping that were entered in this case since neither the Attorney General nor the Pierce County Prosecuting Attorney personally signed the applications. Whatever merit such an argument might have under the no consent statute (RCW 9.73.040(1)), it is not well taken under the one party consent statute (RCW 9.73.090(2)) which requires only that "a law enforcement officer acting

---

[23]*See also United States v. Shields,* 675 F.2d 1152, 1158 (11th Cir. 1982).

[24]*See State v. Williams,* 94 Wn.2d 531, 617 P.2d 1012 (1980).

[25]18 U.S.C. §§ 2515–2518.

[26]RCW 9.73.040(1); RCW 9.73.050.

in the performance of the officer's official duties" make the application. As the record (including the caption of the order set out under "Facts of Case" above) makes clear, the orders in this case were all sought and entered under the one party consent statute. Accordingly, the police officer who made the applications (assisted by a deputy prosecuting attorney) was an appropriate person to apply for the orders. There was no error in this regard.

ISSUE THREE.

CONCLUSION. Information obtained by federal officers from electronic eavesdropping conducted by them in accordance with federal law can legally be furnished to state officers; and such information may, in turn, properly be used by state officers for the purpose of establishing probable cause to obtain the issuance of an order from a state court authorizing electronic eavesdropping in accordance with state statutes.

As discussed above, state statutes require prior court approval for electronic eavesdropping in both one party consent situations and no consent situations, but court approval in one party consent situations is not required for federal officers acting pursuant to federal statutes. In *State v. Williams*, 94 Wn.2d 531, 534, 617 P.2d 1012 (1980), which dealt with one aspect of this conflict between state and federal statutes, this court ruled as follows:

> We hold our state privacy act applies to interceptions and recordings by federal agents and that tape recordings obtained in violation of our act are *inadmissible* in state court proceedings. That act also prohibits testimony about those recorded conversations, when the recording itself is suppressed.

(Italics ours.)

In *Williams*, the word "inadmissible" was used advisedly. The court there ruled as it did in reliance on a state statute, *Williams*, at 541, which specifically renders information obtained in violation of state electronic eavesdropping statutes "*inadmissible* in any civil or criminal case in all courts of general or limited jurisdiction in this state . . ."

(Italics ours.) RCW 9.73.050. Defendants argue on the basis of *Williams,* and other authority of similar import, that information obtained by Pierce County law enforcement authorities from federal law enforcement authorities (based on FBI one party consent tape recordings obtained without a court order) could not be used to establish probable cause for a state court order allowing electronic eavesdropping in accordance with state statutes. We disagree.

Here the trial court found probable cause for the issuance of each of the Superior Court orders authorizing electronic eavesdropping. It also ruled that "[i]nformation obtained from [*sic*] federal agents from the eleven (11) federal tapes which preceded the first State authorized intercept and recording when verbally reported to State officers constituted valid information for determining whether 'probable cause' existed for the issuance of State authority to intercept and record."[27] Defendants contend that probable cause for issuance of the Superior Court order authorizing electronic eavesdropping cannot be based upon the federal tape recordings. Defendants do not, however, contend that there was no probable cause for the issuance of the initial Superior Court order if information derived from the 11 federal tapes can be considered; and since we here conclude that the trial court's ruling upholding the use of information from the federal tapes was correct, we do not further address the subject of probable cause for the issuance of the order.

A basic difference between the situation in this case and the one that the court was confronted with in *Williams* is that the information here obtained by the Pierce County Sheriff was obtained *pursuant to a court order* authorizing the electronic eavesdropping. There was no such order in *Williams.* There, the prosecutor in a state prosecution tried to put recordings obtained by federal authorities directly into evidence; and the prosecutor also tried to put informa-

---

[27]Findings of Fact and Conclusions of Law Regarding Admissibility of Taped Recordings and Constitutionality of Statute (conclusion of law 21).

tion so obtained into evidence indirectly by offering participant testimony about the conversations that had been recorded. That is not the same as holding that the federal recordings were illegal; they were not. The passing mention of "illegality" of the federally obtained tapes in *Williams* must be considered in context; that is, in that opinion "illegality" was used in the sense of "inadmissibility" of the tapes.

This court has never suggested that evidence obtained by federal authorities acting in strict accordance with federal law was illegal. Such evidence was held *inadmissible* in *Williams,* but it was not *illegal.* There is a difference.

Federal statutes relating to electronic eavesdropping specifically authorized the cooperation between federal and state law enforcement agencies which occurred here:

> (1) Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire or oral communication, or evidence derived therefrom, may disclose such contents to another investigative or law enforcement officer to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure.
>
> (2) Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire or oral communication or evidence derived therefrom may use such contents to the extent such use is appropriate to the proper performance of his official duties.

18 U.S.C. § 2517 (part).

The National Wiretapping Commission Report, submitted to President Ford and Congress in 1976, was a comprehensive summary of events and developments attendant upon implementation of the federal statutes relating to electronic surveillance, namely Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (18 U.S.C. §§ 2510–2520). The primary author of the Commission's Report, Professor James B. Carr, is the author of a comprehensive and informative treatise on the subject, *The*

*Law of Electronic Surveillance* (1977).

Pertinent to the issue before us, Professor Carr therein explains the policy and purpose of the above quoted federal statutes:

> Where one law enforcement officer has learned the contents of a communication by any means authorized by Title III, under §2517(1) he may disclose such contents to another law enforcement officer "to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure." The purpose of this provision is to authorize the exchange of eavesdropping information among law enforcement personnel generally, and between state and federal officials particularly.
>
> Although Senate Report 1097 indicates that both officers in such exchange must be engaged in the proper performance of their duties, Congress, as revealed by other aspects of the legislative history, intentionally wrote §2517(1) in the disjunctive. The original draft of Title III required both parties to the exchange to be engaged in the proper performance of their duties, and there was considerable congressional concern about allowing one party to the exchange to provide or receive disclosures outside the scope of his lawful duties. Despite these concerns, §2517(1) was adopted in its present form.

(Footnotes omitted.) J. Carr, *Electronic Surveillance* § 7.04[1], at 433 (1977).

The further discussion in that text concerning use by state officers of evidence obtained by federal officers in states which prohibit electronic surveillance is likewise pertinent insofar as it bears on situations such as that present in this state, where evidence not obtained in accordance with state statutes is inadmissible in state court proceedings:[28]

> Once federal officers have made their eavesdropping evidence available to state officers whose jurisdiction prohibits law enforcement electronic surveillance, the state officers probably can use such evidence. Most prohibitory statutes cover only interception or divulgence, or

---

[28]RCW 9.73.050; *State v. Williams,* 94 Wn.2d 531, 617 P.2d 1012 (1980).

both, but not use. Where the state officers were not involved in the original interception, they, like federal officers prior to Title III, do not violate the state prohibition by using the surveillance information obtained from the federal authorities.

If a state prohibitory statute were to be applied to prevent such use, it might be deemed to be in conflict with the explicit provisions of §§2517(1) and (2). In view of the congressional intention to encourage and facilitate close federal–state cooperation, such conflict would raise difficult preemption issues. Although the state statute would restrict the use of eavesdropping evidence, and thereby, perhaps, surveillance itself, such restriction would impede federal law enforcement activities which were specifically encouraged by §2517(2).

*Such preemption would reach only to allowing state officers to use federally derived evidence for investigative purposes. It would not prohibit the states from excluding such evidence in state trials.*

(Footnotes omitted. Italics ours.) J. Carr, *Electronic Surveillance* § 7.04[2][a], at 435–36 (1977).

The italicized paragraph in the foregoing quotation thus supports the proposition that even where federally obtained electronic eavesdropping information is excluded from evidence by statute, as *Williams* held to be the law of this state, that does not exclude its use in establishing probable cause as we here hold to be appropriate. Accordingly, we do not view our holding herein as incompatible with the holding of this court in *Williams.*

Here the Pierce County Sheriff's deputies were not involved in the FBI wiring of the informant and the obtaining of the 11 federal recordings. No suggestion has been made herein as to any collusion for the purpose of avoiding the requirements of Washington law. What was involved, rather, was cooperation between federal and state officers investigating crime and payoffs in Pierce County and that was not improper.[29] Nothing in the law suggests that a legal wall should be erected between federal and

---

[29]*United States v. Hall,* 543 F.2d 1229, 1233 n.2 (9th Cir. 1976).

state officers investigating vice and corruption in this state; to the contrary, the law encourages their good faith cooperation. When the sheriff's deputies were provided information by the FBI, which had been derived from FBI one party consent recordings, the sheriff's deputies were justified in using it for the purpose of establishing probable cause to procure a state court order authorizing electronic eavesdropping in accordance with state statutes. The trial court did not err in so ruling.

ISSUE FOUR.

CONCLUSION. The electronic eavesdropping authority sought by the sheriff and granted by the court in this case did not terminate when the initial conversation concerning bribery was recorded.

Two state statutes pertain to the time period within which electronic eavesdropping is to be conducted under this state's one party consent statute. One section of the statute provides that "[a]uthorizations issued under this section shall be effective for not more than seven days, after which period the issuing authority may upon application of the officer who secured the original authorization renew or continue the authorization for an additional period not to exceed seven days." RCW 9.73.090(4). The other section is RCW 9.73.130(3)(e), which requires that applications for a court order contain "[a] statement of the period of time for which the recording is required to be maintained, if the character of the investigation is such that the authorization for recording should not automatically terminate when the described type of communication or conversation has been first obtained, a particular statement of facts establishing probable cause to believe that additional communications of the same type will occur thereafter; . . ."

█ These state statutes are patterned after sections of Title III of the Omnibus Crime Control and Safe Streets Act of 1968.[30] Although that federal enactment relates to no consent situations, whereas the state statutes just

---

[30] 18 U.S.C. § 2518(1)(d), § 2518(5).

quoted relate to one party consent situations, we may look to the federal law for interpretative assistance. Construing the above state statutes in this light, it can fairly be said that: the duration of an electronic interception should not be longer than necessary under the facts of the particular case; where one–time surveillance fulfills the needs of the investigation being conducted, that is all that should be authorized or conducted; and where a course of conduct is likely to embrace multiple parties and extend over a period of time, the order authorizing electronic eavesdropping may properly authorize proportionally longer surveillance, up to the statutory maximum.[31] That statutory maximum in one party consent situations is 7 days.[32]

The first Superior Court order authorizing electronic eavesdropping is set out in full under "Facts of Case" above. Pursuant to that one order, conversations were apparently recorded on separate days with defendants O'Neill, Bennett and Chu. The defendants argue: that the conversations subsequent to the initial one with O'Neill were not within the purview of the order; that the subsequent recordings of the conversations with Bennett and Chu should be suppressed; and that the yet later recordings of the defendant Chu (and inferentially of other defendants as well), having been derived from such earlier "illegal" recordings should on that basis also be suppressed.

The court order in question was not a roving commission authorizing the deputy sheriffs to overhear and surreptitiously record any conversation in Pierce County that they chose to, as defendants appear to suggest.[33] Pursuant to the order they were authorized to record conversations with a named individual, the defendant O'Neill, and "others present" at the time of such conversations. The subsequent

---

[31] See J. Carr, *Electronic Surveillance* § 4.05[5], at 185 (1977).

[32] RCW 9.73.090(4).

[33] See *Berger v. New York,* 388 U.S. 41, 59, 18 L. Ed. 2d 1040, 87 S. Ct. 1873 (1967).

conversations pursuant to this court order, first with the defendant Bennett, and then with the defendant Chu, were both in the presence of defendant O'Neill and appear to have been within the initial 7–day period. Later recordings of conversations were made pursuant to subsequent court orders, each of which was based on a detailed renewal application made in the statutorily prescribed manner.[34]

■ The detailed application for the initial order authorizing electronic eavesdropping clearly showed that the offense under investigation was of an ongoing conspiratorial nature and involved, or potentially involved, several people. The application referred in the plural to conversations regarding prostitution operations, "laundering" of funds from such operations, making monthly payoffs and ended by requesting authority to record "communications or conversations". The order itself also referred to recording "communications or conversations". The order authorizing electronic eavesdropping arguably contained a measure of ambiguity so far as the length of the surveillance term authorized by the order is concerned. The trial court, however, ruled as to this that the authority granted by the order "is not limited to one conversation but instead authorizes recording of all communications and conversations of defendant O'Neill and others present concerning *bribery of a law enforcement officer* for a period of seven (7) days."[35] Viewing the court's order in a reasonable and commonsense manner, rather than hypertechnically,[36] we conclude that the trial court's interpretation of it was correct.

In the issuance of a conventional search warrant, a principal protection of a citizen's Fourth Amendment rights is the neutral and detached magistrate interposed between

---

[34]RCW 9.73.130.

[35]Findings of Fact and Conclusions of Law Regarding Admissibility of Taped Recordings and Constitutionality of Statute (conclusion of law 5).

[36]*See State v. Olson*, 32 Wn. App. 555, 557, 648 P.2d 476 (1982).

the person requesting the search warrant and its issuance by the court.[37] Conventional search warrants and orders authorizing electronic eavesdropping have many similar characteristics; there are, however, some material differences. These differences include the nature of what is sought to be discovered, the method of acquisition and, in many cases, their duration. These practical differences lead in turn to differences in impact. An order authorizing electronic eavesdropping often affects more persons and may involve multiple invasions of privacy. Such an order is also secret to at least one of the parties in one party consent situations (and to all the parties in no consent situations) and, unlike the conventional search pursuant to a search warrant, is not likely to become promptly known to all parties affected.[38] It follows from this that in entering any ex parte order authorizing electronic eavesdropping under the laws of this state, the issuing court should not routinely or automatically issue any such order or renewal order that may be sought, but should exercise all reasonable care consonant with the degree of intrusiveness involved so as to prevent the statutorily authorized process from being abused in any way. No such abuse appears in this case.

Affirmed and remanded for further proceedings.

DOLLIVER, C.J., UTTER and BRACHTENBACH, JJ., and CUNNINGHAM, J. Pro Tem., concur.

DORE, J. (concurring in part, dissenting in part)—I concur with the result reached by the majority. The trial court properly denied both the motion to dismiss and the motion to suppress evidence. First, the motion to dismiss was properly denied because "corrupt intent" is an element of

---

[37]*Johnson v. United States,* 333 U.S. 10, 14, 92 L. Ed. 436, 68 S. Ct. 367 (1948); *Franks v. Delaware,* 438 U.S. 154, 170, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978).

[38]*See* J. Carr, *Electronic Surveillance* § 2.05A, at 3–4 (Supp. 1984); C. Fishman, *Wiretapping and Eavesdropping* § 6, at 7–8 (1978); *United States v. Santora,* 583 F.2d 453, 462 n.6 (9th Cir. 1978).

the crime of bribery, RCW 9A.68.010. This element expunges any objection to the charge of bribery as unconstitutionally overbroad and vague. Second, suppression of the state–authorized interception of conversations is unwarranted, not for the reasons stated by the majority, but because the affidavits filed in support of issuance of the state warrants independently establish probable cause and there is no need to use federally obtained information.

I dissent to the majority's holding that probable cause for a state interception of conversations can be established by federal interceptions that violate state law. The majority's holding violates the privacy interests of Washington residents guaranteed by the Washington privacy act, undermines the protections of article 1, section 7 of the Washington State Constitution, and encourages subterfuge and evasion with respect to state law.

In the subject case, the state and federal law enforcement authorities conducted a joint investigation into Pierce County sauna activities. During the course of their cooperative activities, 13 tape recordings were made by federal agents. These recordings did not satisfy the requirements of our Washington privacy act, RCW 9.73, and were, therefore, illegally obtained under Washington law. The federal recordings were utilized by the State, however, in submitting information on such tapes to superior court judges for determining probable cause to authorize secret recordings by state agents.

The federal wiretap statute, Title III of the Omnibus Crime Control and Safe Streets Act of 1968, deals with wire interception and interception of oral communications. 18 U.S.C. §§ 2510–2520. Its purpose is to protect the privacy of wire and oral communications and to delineate on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized. *Halpin v. Superior Court,* 6 Cal. 3d 885, 495 P.2d 1295, 101 Cal. Rptr. 375 (1972).

Title III prohibits most interceptions of either wire or oral communications when neither party consents to the

interception. 18 U.S.C. § 2511 (exceptions for national security and communication common carriers). On the other hand, Title III does not make it unlawful for persons acting under color of law to intercept a wire or oral communication, where such person is a party to the communication, or one of the parties to the communication has given consent to such interception. 18 U.S.C. § 2511(2)(c). Neither the federal constitution nor any federal statute requires that official approval be secured before conversations are recorded by federal government agents with the consent of one of the conversants. *See United States v. Caceres*, 440 U.S. 741, 59 L. Ed. 2d 733, 99 S. Ct. 1465 (1979). Hence, law enforcement officers need not, under the federal statute, obtain a court order prior to wiring an informant who has consented to the interception.

The provisions of Title III which govern the receipt, disclosure, and use of wiretap–derived information by law enforcement officers provide as follows:

(1) Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire or oral communication, or evidence derived therefrom, *may disclose* such contents to another investigative or law enforcement officer *to the extent that such disclosure is appropriate to the proper performance of the official duties* of the officer making or receiving the disclosure.

(2) Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire or oral communication or evidence derived therefrom *may use* such contents *to the extent such use is appropriate to the proper performance of his official duties.*

(Italics mine.) 18 U.S.C. § 2517(1), (2). Under these provisions, a state officer may receive and use wiretap information only to the extent that such receipt and use is appropriate for the proper performance of his official duties. The scope of a state officer's official duties is defined by state law.

The legislative history of Title III indicates that Congress

intended to permit state electronic surveillance laws to be more restrictive than the federal provision and, therefore, more protective of individual privacy. State enactments cannot, however, be less restrictive. Nor can they expand the use of electronic surveillance beyond the perimeters established by Title III. Thus, Congress did not intend to supersede state attempts to protect conversational privacy but merely to subject state eavesdropping legislation to minimum standards. *See State v. Williams,* 94 Wn.2d 531, 539–40, 617 P.2d 1012 (1980); J. Carr, *Electronic Surveillance* § 2.04[a] (1977).

The State of Washington attempted to curtail wiretapping before the federal statute was adopted. In 1967, Washington enacted RCW 9.73.030–.080, making it unlawful for anyone not operating under a court order to intercept or divulge certain communications without the consent of all persons engaged in the communications or conversations. This law was characterized as an *all party* consent law. The law provides that a court ordered wiretap can be authorized when there are reasonable grounds to believe that national security or human life is endangered. RCW 9.73.040. As originally adopted, RCW 9.73 is one of the most restrictive electronic surveillance laws ever promulgated.

In 1970, the statute was amended to exclude certain police and fire department functions such as recording of incoming telephone calls. Laws of 1970, 1st Ex. Sess., ch. 48, § 1 (codified at RCW 9.73.090(1)). In *State v. Wanrow,* 88 Wn.2d 221, 559 P.2d 548 (1977), this court interpreted RCW 9.73.090(1) to except emergency telephone calls to police from the prohibition against the unconsented recording of private conversations only for the purpose of insuring the accuracy of their reception. This provision does not affect the application of RCW 9.73.050 under which nonconsensual recordings of private conversations are inadmissible as evidence.

In light of *Wanrow,* the Legislature again amended RCW 9.73. The original Senate proposals would have conformed

the statute with the federal law and allowed recordings when one party consents. Senate Bill 2925, 45th Legislature (1977); Engrossed Senate Bill 2419, 45th Legislature (1977). The House, however, refused to approve these Senate proposals because they were too broad an exception to the right of privacy. Hence, the statute was not conformed to federal law but rather a provision was adopted which retains the general restrictiveness underlying the statute yet gives law enforcement personnel some latitude by making it lawful to intercept oral communications when one party consents and the officer has obtained a court order. RCW 9.73.090(2). The court order must be based on probable cause to believe that the nonconsenting party has committed, is engaged in, or is about to commit a felony. RCW 9.73.090(2).

The statute provides that it is *unlawful* for any individual to violate its provisions. RCW 9.73.030. The statute excludes all evidence acquired in violation of the statute or court order, RCW 9.73.050, and provides both a civil and criminal penalty. RCW 9.73.060 and .080.

Thus, the Washington privacy act significantly expands the minimum standards of the federal statute and offers a greater degree of protection to Washington citizens. The state act requires both one party consent and probable cause, whereas the federal wiretap statute simply provides that it is not unlawful to intercept communications where one party consents to the interception.

In the present action, probable cause for the court ordered state interception was based in part on interception and recording of conversations in accordance with the federal wiretap statute, but in violation of the more restrictive state statute. The majority condones this activity on the basis that the federal information was not admitted in the state criminal trial proceeding and the federal statutes mandate for cooperation between federal and state law enforcement agencies. I cannot agree.

The Washington privacy act provides that one party consent recordings are unlawful without prior court

approval based upon probable cause. Thus, the state officer's use of the federal wiretap information was the use of illegally seized evidence in a probable cause proceeding. This use is prohibited under RCW 9.73.030 and article 1, section 7 of the Washington State Constitution.

The primary purpose of the Washington privacy act is to protect the privacy of individuals by prohibiting public dissemination, even in the course of a criminal proceeding, of illegally obtained information. *State v. Williams,* 94 Wn.2d 531, 542–43, 617 P.2d 1012 (1980); *State v. Wanrow,* 88 Wn.2d 221, 233, 559 P.2d 548 (1977). In *Williams,* we held that the prohibitions of the state act were applicable to federally authorized interceptions which did not comply with the state statute. Recordings made by federal agents, as well as testimony as to the content of the conversations, were inadmissible in a criminal proceeding. The basis of our holding in *Williams* was the illegality of the wiretap under state law, the statutory prohibition of admissibility of unlawfully obtained information, the statute's application to any individual, and the specific expectation of privacy an individual has under the Washington privacy act.

Similarly, in *State v. Henderson,* 16 Wn. App. 526, 557 P.2d 346 (1976), the Court of Appeals held that evidence obtained in violation of RCW 9.73 cannot be used for impeachment. The court stated:

> Although Henderson did not directly seek the admission of "[a]ny information obtained in violation of RCW 9.73.030" (RCW 9.73.050), his use of the transcription clearly violated the statute's intended purpose of preventing "encroachment upon the privacy of the parties to a conversation." *State v. Grant,* 9 Wn. App. 260, 265, 511 P.2d 1013 (1973).

*Henderson,* at 530.

The same is true in the instant criminal proceeding. Although the State did not seek the admission of the information obtained in violation of the state privacy act, the use of the illegally obtained information in the probable cause determination clearly violated the act's intended pur-

pose of prohibiting public dissemination of illegally obtained information. Affidavits and information of probable cause are generally available for public dissemination. *Cowles Pub'g Co. v. Murphy,* 96 Wn.2d 584, 637 P.2d 966 (1981).

A well established principle of probable cause determinations is that illegally seized evidence cannot be used to establish probable cause. *State v. Bean,* 89 Wn.2d 467, 572 P.2d 1102 (1978); *State v. Jones,* 22 Wn. App. 447, 591 P.2d 796 (1979). This is equally true of the use of information from an illegal wiretap or interception in support of a subsequent intercept. *United States v. Giordano,* 416 U.S. 505, 529–34, 40 L. Ed. 2d 341, 94 S. Ct. 1820 (1974); *see also* C. Fishman, *Wiretapping and Eavesdropping* § 80 (1978). The United States Supreme Court also has indicated that evidence obtained in violation of intercept and recording statutes may not be used in any sense:

> To forbid the direct use of methods thus characterized but to put no curb on their full indirect use would only invite the very methods deemed "inconsistent with ethical standards and destructive of personal liberty." What was said in a different context in *Silverthorne Lumber Co.* v. *United States,* 251 U. S. 385, 392, [64 L. Ed. 319, 40 S. Ct. 182, 183, 24 A.L.R. 1426,] is pertinent here: "The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the court, but that it shall not be used at all." See *Gouled* v. *United States,* 255 U. S. 298, 307 [65 L. Ed. 647, 41 S. Ct. 261, 264].

*Nardone v. United States,* 308 U.S. 338, 340–41, 84 L. Ed. 307, 60 S. Ct. 266 (1939).

Employing the same logic to the case at bench, it follows that information obtained in violation of RCW 9.73.030 not only may not be used at trial, but also *may not be used to establish probable cause* for issuance of court authorized intercepts pursuant to RCW 9.73.090(2). To conclude otherwise is to encourage state officers to break faith with the State and its citizens and violate clearly expressed state policy. Though Congress did contemplate close cooperation

between federal officers and the officers of states welcoming such cooperation, it did not intend to permit usurpation of state law in the manner contemplated by the majority opinion.

Individuals residing in Washington have a legitimate interest in restricting the admissibility of evidence derived from the federal intercept in state court proceedings. The privacy interests of individuals concerning illegally obtained evidence are protected by the requirement that such evidence not be used against such individuals. Violation of the state privacy act by the joint federal/state investigation represents the kind of intrusion that the exclusionary rule is designed to prevent. Refusal to employ the strict state standards to the wiretap evidence gathered by federal agents in contravention of state law has the effect of impairing legitimate state privacy interests.

Article 1, section 7 of the Washington State Constitution provides: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." This constitutional guaranty confers upon the citizenry of this state a right to be free from unreasonable governmental intrusions. *State v. Jackson,* 102 Wn.2d 432, 443, 688 P.2d 136 (1984). The exclusionary rule is applicable whenever the right of an individual to be free from unreasonable governmental intrusions under article 1, section 7 is unreasonably violated. *State v. White,* 97 Wn.2d 92, 110, 640 P.2d 1061 (1982).

This court has recognized that the exclusionary rule should be applied to achieve three objectives:

> first, and most important, to protect privacy interests of individuals against unreasonable governmental intrusions; second, to deter the police from acting unlawfully in obtaining evidence; and third, to preserve the dignity of the judiciary by refusing to consider evidence which has been obtained through illegal means.

*State v. Bonds,* 98 Wn.2d 1, 12, 653 P.2d 1024 (1982).

The statutorily imposed requirement of establishing probable cause for issuance of warrants for state intercepts

embodies the constitutional standards for accommodating the often opposing interests in safeguarding citizens from unreasonable interferences with privacy and in seeking to give fair leeway for effective law enforcement. *See State v. Broadnax,* 98 Wn.2d 289, 303, 654 P.2d 96 (1982).

Policy arguments rooted in deterrence and maintaining judicial integrity, the other objectives which are said to be served by the exclusionary rule, have great validity here. A blanket suppression rule governing the use of unlawfully obtained wiretap evidence for purposes of determining probable cause would deter state and federal officers from violating state law.

I perceive no basis for distinguishing between the exclusionary rule of RCW 9.73.050 and the use prohibition of RCW 9.73.030; each of those provisions is a device for eliminating an invasion of privacy whether in its inception or derivative thereof. If evidence obtained in conformity with federal standards but in violation of state law is excluded in state court proceedings under RCW 9.73.050, *State v. Williams,* 94 Wn.2d 531, 617 P.2d 1012 (1980), its use by state officers in a probable cause proceeding continues to be precluded by RCW 9.73.030.

It is contrary to reason and common sense for the majority to contend that the federal wiretap information in *Williams* was not illegal. It is the fact that such evidence is illegal under Washington law that requires it to be held inadmissible in a state court proceeding pursuant to RCW 9.73.050. *See Williams,* at 536. In the present case, it is not the exclusionary rule of RCW 9.73.050 which prohibits the use of this illegally seized information, but the application of the firmly established principles of article 1, section 7 that illegally seized information shall not be used in a court proceeding to establish probable cause for a subsequent seizure which requires exclusion of the federal wiretap.

The majority has, in effect, created a new version of the "silver platter doctrine". According to the original silver platter doctrine, evidence obtained by state officials and turned over to federal officials would not be suppressed

even though it was obtained by means of an illegal search. *Lustig v. United States,* 338 U.S. 74, 93 L. Ed. 1819, 69 S. Ct. 1372 (1949). The original doctrine was overruled by the Supreme Court in *Elkins v. United States,* 364 U.S. 206, 4 L. Ed. 2d 1669, 80 S. Ct. 1437 (1960) on the basis that it undermined the policies of deterrence and judicial integrity inherent in the purpose of the exclusionary rule.

> Free and open cooperation between state and federal law enforcement officers is to be commended and encouraged. Yet that kind of cooperation is hardly promoted by a rule that implicitly invites federal officers to withdraw from such association and at least tacitly to encourage state officers in the disregard of constitutionally protected freedom. If, on the other hand, it is understood that the fruit of an unlawful search by state agents will be inadmissible in a federal trial, there can be no inducement to subterfuge and evasion with respect to federal–state cooperation in criminal investigation. Instead, forthright cooperation under constitutional standards will be promoted and fostered.

*Elkins,* at 221–22.

The majority's holding invites state law enforcement personnel to withdraw from initial association with federal officers and tacitly encourages the federal officers to disregard our statutory prohibitions. The silver platter doctrine would then permit state use of this illegally obtained information to obtain state court authorization for its own interception.

To allow the illegally obtained evidence to be used to establish probable cause would simply encourage law enforcement to do indirectly that which they cannot legally do directly. This court should not condone such an incentive to circumvent the purpose and intent of the state privacy act by subterfuge and evasion of state–guaranteed privacy interests.

I would hold that the information obtained by the federal officers was illegal under Washington law and should have been excluded from the probable cause determination. Such a rule is consistent with the *Williams* opinion, rein-

forces the policies underlying the privacy act, and prevents erosion of the exclusionary rule and its deterrent effect.

Furthermore, such a holding does not require a finding that the state orders in the instant action were improperly issued. The affidavits establish probable cause for issuance of the warrants independent of the information contained in Federal Bureau of Investigation tapes. This court recently reaffirmed the *Aguilar–Spinelli* 2-pronged test for evaluating the existence of probable cause in relation to informants' tips. *State v. Jackson,* 102 Wn.2d 432, 688 P.2d 136 (1984). For an informant's tip (as detailed in an affidavit) to create probable cause for a search warrant to issue, (1) the officer's affidavit must set forth some of the underlying circumstances from which the informant drew his conclusions so that a magistrate can independently evaluate the reliability of the manner in which the informant acquired his information; and (2) the affidavit must set forth some of the underlying circumstances from which the officer concluded that the informant was credible or his information reliable. *Jackson,* at 435. The affidavit submitted by Sergeant Gibbs meets this 2-pronged test. Exhibit B.

The first, or "basis of knowledge", prong requires a revealing of some underlying factual justification for the informant's conclusion so that an assessment of the probable accuracy of the informant's conclusion can be made. *State v. Sieler,* 95 Wn.2d 43, 48, 621 P.2d 1272 (1980). Generally the surest way to satisfy the "basis of knowledge" prong is by showing that the informant is passing on what is to him firsthand information. 1 W. LaFave, *Search and Seizure* § 3.3 (1978). In the affidavit submitted by Sergeant Gibbs in the instant case, paragraph (2)(g) clearly establishes the informant's firsthand knowledge:

> Between 4/25/83 and 6/08/83 Confidential Informant #421 and [defendant] Chong Sim O'Neill had several conversations regarding the sauna operations . . .

Hence, the first prong of the *Aguilar–Spinelli* test is met.

Under the second or "veracity" prong, sufficient facts

must be presented so the magistrate may determine either the inherent credibility or the reliability of the informant on the particular occasion. *State v. Fisher,* 96 Wn.2d 962, 965, 639 P.2d 743, *cert. denied,* 457 U.S. 1137 (1982). This prong is met if the information has led to arrests or if the past information has proven to be "'true and correct'". *Fisher,* at 965. Sergeant Gibbs' affidavit states that the information received from informant Velez was proven to be "correct and true" and led to one arrest. Exhibit B, paragraph (2)(a), (c). Hence, the affidavit meets the second prong of the *Aguilar–Spinelli* test.

Accordingly, there existed lawful grounds, independent of the illegal federal tapes, in support of the state court warrants for intercept of conversation.

## CONCLUSION

Washington State has chosen to grant its citizenry a greater privacy interest in communications than mandated by federal law. Where the State chooses to enforce this privacy interest by prohibiting certain conduct by its law enforcement officers, that prohibition stands as a limitation of the state officer's authority to otherwise use information obtained in violation of the privacy interests of its citizenry.

I submit that the construction of the Washington privacy act by which the majority sustains the use of illegally obtained wiretap information, a construction which labels a direct violation of the state's privacy act appropriate to the proper performance of the state officer's official duties, is no inconsequential intrusion on the privacy interests of our citizenry. Reading into the state privacy act the legislative intent to permit illicit investigative cooperation decried by state law, not only is an undeserved blight on our Legislature but a compromise of the integrity of the Washington judiciary as well. In my view, due respect to our Legislature and the integrity of our judiciary forbids our ignoring, if not rewarding, a state officer's violation of the commands of the sovereignty which employs him.

In all other aspects, I concur with the majority.

PEARSON, J., concurs with DORE, J.